FILED
United States Court of Appeals
Tenth Circuit

November 9, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

KELVIN HILL,

       Defendant - Appellant.

No. 14-2206

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:12-CR-02679-JCH-1)**

---

Ryan J. Villa, The Law Office of Ryan J. Villa, Albuquerque, New Mexico, for
Defendant-Appellant.

David N. Williams, Assistant United States Attorney (Damon P. Martinez, United
States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-
Appellee.

---

Before **BRISCOE**, **MURPHY**, and **GORSUCH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

      Kelvin Hill boarded an east-bound Amtrak train in Los Angeles, California.

When the train made its regularly scheduled stop in Albuquerque, New Mexico, it

was boarded by Agent Kevin Small of the Drug Enforcement Agency ("DEA"). Small boarded the train to conduct drug-interdiction activities. He entered the last coach car and proceeded to the common luggage area, a part of each coach utilized by passengers to store large pieces of unchecked luggage. Small noticed a black and white "Coogi" brand suitcase with no name tag. He removed the Coogi suitcase from the common luggage area; carried it to the passenger area; and rolled it down the center aisle of the coach, asking each passenger if the bag belonged to him. All passengers present in the coach, including Hill, denied ownership of the bag. Deeming it abandoned, Small searched the bag, finding a large quantity of cocaine and items of clothing linking the bag to Hill.

A grand jury charged Hill with possessing with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Hill moved to suppress the cocaine, asserting Small's actions in taking the Coogi bag from the common storage area and moving it about the coach amounted to an illegal seizure, rendering Hill's subsequent abandonment of the bag legally invalid. The district court denied the motion, concluding Small did not seize the bag at any point before Hill abandoned it. Hill entered a conditional guilty plea, preserving his right to appeal the district court's denial of his suppression motion.

Hill's appeal from the denial of his suppression motion requires that this court answer a particularly narrow legal question: Did Small's actions in removing Hill's bag from the train's common luggage area and carrying it

through the coach as he questioned passengers constitute a seizure of the bag?[1]

Because Small's actions amounted to a "meaningful interference with [Hill's] possessory interests in" the Coogi bag, we answer that question in the affirmative. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **reverses** and **remands** to the district court for further proceedings consistent with this opinion.

When reviewing a ruling on suppression of evidence, this court reviews "the district court's factual findings for clear error, viewing the evidence in the light most favorable to those findings." *United States v. Johnson*, 584 F.3d 995, 998 (10th Cir. 2009). The district court's legal conclusions are reviewed de novo.

---

[1]The government contends very simply that there is no seizure. It does not assert Hill's abandonment of the bag is valid if preceded by a seizure. *Cf. United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993) ("[A]n abandonment is not voluntary when it results from a Fourth Amendment violation."). Nor does it contend that if Small's actions amounted to a seizure of the bag, that warrantless seizure was supported by reasonable suspicion. *See United States v. Place*, 462 U.S. 696, 706 (1983) ("[W]hen an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope."). For his part, Hill does not assert Small's actions amounted to a search of the bag. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) ("[The] text [of the Fourth Amendment] protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." (footnotes omitted)); *Soldal v. Cook Cty.*, 506 U.S. 56, passim (1992) (noting the interests protected by the Fourth Amendment's seizure clause are analytically distinct from the interests protected by the Fourth Amendment's search clause).

*Id.* Where, as here, the facts are undisputed, the question of whether a seizure has occurred within the meaning of the Fourth Amendment is reviewed de novo. *Cf. United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998) (applying de novo review to question whether a Fourth Amendment "search" has occurred).

The Fourth Amendment protects, *inter alia*, "[t]he right of the people to be secure in their . . . effects[] against unreasonable . . . seizures." U.S. Const. amend. IV. A traveler's luggage is one of the many "effects" protected by the Fourth Amendment. *See United States v. Place*, 462 U.S. 696, 700-01 (1983); *United States v. Chadwick*, 433 U.S. 1, 13 (1977). A seizure within the contemplation of the Fourth Amendment occurs when there is some meaningful interference with an individual's possessory interest in his property. *Jacobsen*, 466 U.S. at 113. Here, Small's actions—the removal of the Coogi bag from the place it was stored and the exercise of control over the bag as it was transported around the coach car—interfered with Hill's possessory interest in the bag. That is, by taking control of the Coogi bag for his own purpose, i.e., the determination of the bag's owner, Small deprived Hill of his ability to access the bag for his own purposes, on his own time, and at the place where unchecked baggage is properly stowed. The more difficult question, however, is whether that interference was meaningful for the purposes of the Fourth Amendment. *See id.*[2]

---

[2]*See also United States v. Va Lerie*, 424 F.3d 694, 706 (8th Cir. 2005) (en banc) ("Because seizure is defined as some meaningful interference with an
(continued...)

Unfortunately, there is very little Supreme Court precedent addressing the parameters of the Fourth Amendment's meaningful-interference test as applied to seizures of property, let alone seizures of luggage. *Id.* at 113 n.5 (recognizing that "the concept of a 'seizure' of property is not much discussed in our cases"). The only Supreme Court case that addresses the seizure of luggage outside of the specialized automobile context involves a seizure from the direct possession of the traveler. *Place*, 462 U.S. at 699. The Supreme Court suppressed evidence obtained in that case, determining a ninety-minute detention of luggage was too long to be a *Terry* stop and, thus, had to be supported by probable cause. *Id.* at 707-09. Furthermore, the parties have not directed this court to any federal circuit court of appeals decisions addressing the issue in a factual context similar to that at issue in this case and, as far as this court can determine, no such decisions exist.

Existing cases addressing potential seizures of luggage fall within two typical paradigms. Courts have routinely held that taking luggage from the direct possession of a traveler amounts to a seizure. *See, e.g.*, *Place*, 462 U.S. at 708; *United States v. Scales*, 903 F.2d 765, 766, 769 (10th Cir. 1990). Alternatively,

---

[2](...continued)
individual's possessory interests in his property, not all police interference with an individual's property constitutes a Fourth Amendment seizure, i.e., the police do not seize property every time they handle private property. By requiring some *meaningful interference* with an individual's possessory interests in property, the Supreme Court inevitably contemplated excluding *inconsequential interference* with an individual's possessory interests.").

courts have consistently held that a brief detention of checked baggage that does not delay the bag from reaching its intended destination does not amount to a seizure. *See United States v. Va Lerie*, 424 F.3d 694, 703-07 (8th Cir. 2005) (en banc) (discussing numerous cases). This is so because "a passenger gives up his immediate possessory interest when he checks his bags with the commercial carrier as bailee." *Id.* at 706. Upon checking a bag, the traveler's possessory interest is limited to the right to reclaim the bag at the specified time and place. *Id.* Thus, the case law is clear that a traveler's possessory interest in his luggage is at its zenith when the luggage is in his direct possession and is at its nadir when the luggage has been checked with a common carrier. Although these precedents do not provide a meaningful answer to the question faced in this case, they do state a sensible rule: in assessing whether a detention of property amounts to a meaningful interference with the property owner's possessory interests, courts must be mindful of the nature of the possessory interest implicated.[3] *See id.*

Hill's possessory interest in the Coogi bag stowed in the common luggage area of the coach is intermediate between a bag in his direct possession and a bag checked with Amtrak. Because the bag was in a common storage area, rather than his immediate possession, Hill could reasonably expect the bag could be moved

---

[3]Because the cases cited by the parties fall into one of the two typical paradigms discussed above, this court finds them less than helpful in resolving the question at issue in this case. For that reason, there is no need to discuss those cases in any real detail.

about the storage area as new passengers boarded the train and existing passengers exited the train. *See id.* (considering what a traveler would "reasonably expect" in defining the nature of the traveler's possessory interest in his luggage); *cf. Nicholson*, 144 F.3d at 637 (examining what a traveler "reasonably might expect" in determining whether physical manipulation of luggage amounted to a search). That is, Hill could reasonably expect departing passengers might remove his luggage from the rack to get a firm grip on an adjacent bag. He could likewise expect that arriving passengers might reposition his bag to an adjacent rack in an effort to consolidate the arriving passengers' luggage. On the other hand, having retained responsibility for the bag instead of checking it with Amtrak officials, he could reasonably expect that he could access that bag in the common storage area at any time he might choose. Small's actions, in taking the bag into his own dominion and control for the purpose of finding its owner and conducting narcotics interdiction, deviated significantly from a reasonable traveler's expectations as to how his bag would be treated in the common storage area and, concomitantly, deprived Hill of his possessory interest in being able to access his luggage on his own schedule. This intrusion, being entirely at odds with the expectations of a reasonable traveler, is meaningful in the Fourth Amendment sense. Thus, Small's actions amounted to a

seizure of Hill's luggage.[4]  Because that seizure, as the United States concedes, was undertaken without reasonable suspicion, the existence of exigency, or the issuance of a warrant, it was in violation of the Fourth Amendment.

In response to all this, the United States avers that because Hill's luggage was not marked with a baggage tag, his possessory interest in the bag was somehow diminished.  In support of this assertion, the government points to a portion of the record denoting Amtrak's luggage policy and Small's testimony at the evidentiary hearing.  This court sees two significant problems with the government's argument in this regard.  A review of the record reveals the government did not make this argument before the district court.  *See United States v. Dewitt*, 946 F.2d 1497, 1499 (10th Cir. 1991) ("We will not consider issues which are raised for the first time on appeal unless a party demonstrates an impediment which prevented raising the argument below.").  Instead, the government made the analytically distinct argument that the lack of a tag on the Coogi bag contributed to the existence of reasonable suspicion *prior to Small's*

_____

[4]This court notes the conclusion that Small's actions amounted to a seizure of Hill's bag does not, in any way, prevent law enforcement from undertaking meaningful drug interdiction activities like those at issue in this case.  Consistent with the Fourth Amendment, Small could have enquired about ownership of the bag by providing each passenger present in the coach with an accurate description of the bag.  Or, a more likely alternative in this era of ubiquitous smartphone technology, Small could have taken a picture of the bag to show to the passengers while investigating ownership of the bag.  The Fourth Amendment, however, prohibits Small from taking dominion and control, for his own purposes, of an unchecked bag left in a common storage area, when doing so is completely at odds with the expectations of a reasonable Amtrak passenger.

*removal of the bag from the common storage area*.  As noted above, however, the United States has abandoned on appeal any claim that Small's seizure of the Coogi bag was supported by reasonable suspicion.

In any event, the limited record in this case does not demonstrate a reasonable traveler would expect a diminished or extinguished possessory interest in untagged luggage stored in the common baggage area on an Amtrak train. Attached to the United States' response to Hill's motion to suppress is a single page describing Amtrak baggage policies that appears to derive from the internet. That policy merely states as follows: "All items must contain an ID tag - free tags supplied at stations."  There is no indication in the record that this policy is posted in Amtrak stations or on Amtrak trains, or that the policy is set out on Amtrak tickets or boarding documents.  At the evidentiary hearing, Small testified that "since 9-11" Amtrak wants law enforcement to do the following: "The bag, if it's not tagged, they want us to find the owner of the bag.  And if we cannot find the owner of the bag, the bag will not stay on the train as it leaves Albuquerque." Small also testified, however, that his understanding of this policy was derived from his generalized conversations with train conductors, not from a memorialized Amtrak policy.  He also admitted that he had not had any relevant discussions with Amtrak employees on the date in question; there was no "written policy between Amtrak and the DEA discussing procedures for unidentified

bags"; and Amtrak did not, itself, enforce any requirements that baggage be tagged. In fact, Small testified as follows regarding Amtrak security protocols:

> [Counsel] . . . . I heard you on the tape also saying that there isn't any security in Los Angeles where [passengers] board. Is that correct?
>
> [Small]. That's correct.
>
> [Counsel]. So there isn't somebody that runs the bag through an x-ray, like in the airport?
>
> [Small]. No, sir. There is absolutely nothing in Los Angeles. You can board that train with anything.

R. Vol. 3 at 65. This testimony is fully borne out by the fact Hill was able to board the train in Los Angeles with his untagged luggage and place it in the common storage area without *any indication* from Amtrak that his bag could possibly be removed from the train pursuant to the internet policy identified by the government. All this being the case, the record simply does not support the contention Hill had a diminished possessory interest in his bag because it was not tagged.

For the reasons set out above, this court concludes the district court erred when it denied Hill's motion to suppress. Thus, the matter is **remanded** to the district court for further proceedings consistent with this opinion.