IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,959

STATE OF KANSAS,
*Appellee*,

v.

DAVID E. PARKER JR.,
*Appellant.*

SYLLABUS BY THE COURT

1.

A police officer's warrantless search is per se unreasonable under the Fourth Amendment to the United States Constitution unless the State can fit the search within a recognized exception to the warrant requirement. One such exception is when the search occurs with probable cause plus exigent circumstances. The State bears the burden to establish a challenged search was lawful.

2.

K.S.A. 2017 Supp. 22-2901(1) generally provides that when an arrest is made, with or without a warrant, the arrestee shall be taken without unnecessary delay before a magistrate.

3.

Under K.S.A. 2017 Supp. 22-2901(1), the requirement to take an arrestee before a judge or magistrate without unnecessary delay safeguards the arrestee's rights by making certain a judicial officer advises the arrestee of constitutional rights without hampering effective and intelligent law enforcement.

1

4.

A property seizure under the Fourth Amendment to the United States Constitution arises when there is some meaningful interference by law enforcement with an individual's possessory interests in that property.

5.

K.S.A. 2017 Supp. 8-1568 prohibits a refusal to stop for a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. If the officer giving such signal is in an official police vehicle, that vehicle must be appropriately marked showing it to be an official police vehicle.

6.

K.S.A. 2017 Supp. 8-1568(e)(2) defines an appropriately marked official police vehicle to include one equipped with functional emergency lights or siren or both.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 1, 2016. Appeal from Sedgwick District Court; DOUGLAS R. ROTH and STEPHEN J. TERNES, judges. Opinion filed December 7, 2018. Judgment of the Court of Appeals affirming in part, reversing in part, and remanding is affirmed as to the issues subject to review. Judgment of the district court is affirmed as to the issues subject to review.

*Christina M. Kerls*, of Kansas Appellate Defender Office, argued the cause, and *Kimberly Streit Vogelsberg*, of the same office, was with her on the briefs for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: David E. Parker Jr. appeals his convictions of possession of cocaine, fleeing or attempting to elude a police officer, driving with a suspended license, failure to signal while turning, and driving with no headlights. The Court of Appeals affirmed in part, reversed in part, and remanded on Parker's jury selection challenge based on *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). *State v. Parker*, No. 112,959, 2016 WL 3570512, at *11 (Kan. App. 2016) (unpublished opinion). Parker seeks our review on three issues the panel rejected: (1) whether drug evidence found in his vehicle should be suppressed; (2) whether sufficient evidence existed to support the crime of fleeing or eluding; and (3) whether Parker's prior convictions could be used without a jury finding to increase his sentence. We affirm the Court of Appeals' judgment, although our rationale differs from the lower courts on the evidence suppression question.

FACTUAL AND PROCEDURAL BACKGROUND

The material facts are undisputed. Officer James Summerer observed a vehicle traveling without its headlights on after dark. The officer was driving an unmarked Crown Victoria. He activated its red and blue emergency lights, which projected from the front and the back, and its "wig wag" lights. The vehicle without its headlights on did not pull over. Instead, it continued on, made several turns on city streets, and briefly stopped to let out a female passenger.

While shining his spotlight on the vehicle during the pursuit, Summerer saw the driver, who was "leaned over and diggin[g] around in the area off to his right, which would be the console area of the car." The vehicle finally stopped in a grocery store parking lot. The driver parked the car in the public lot, got out, and locked it.

3

Summerer arrested the driver and found $965 in cash and a Kansas ID card identifying him as Parker, who acknowledged his driver's license was revoked. Parker quickly told the officer a warrant would be needed to search the automobile. After placing Parker in a police car, Summerer walked around Parker's car but did not see anything illegal in plain view. The officer called for a K-9 unit. After about an hour, the dog arrived, sniffed around the vehicle's exterior, and alerted on the passenger side. The officers unlocked the vehicle to let the dog inside. It alerted again at the center console. Officers searched the area and found plastic-wrapped cocaine folded inside a knit hat and a plastic bag containing cocaine inside a cup holder.

The precise time between the stop and the dog alert was not established below. Summerer testified he took Parker into custody about 7:20 p.m., and the drug evidence was field-tested about 8:40 p.m. Based on this, the district court found "an hour or so" elapsed between the arrest and the dog's alert.

During booking, Summerer told Parker he would be charged with possession of cocaine with intent to distribute in addition to the various traffic charges. Parker told the officer "if he was a drug dealer he felt that the money would be in smaller denominations than what he had, and . . . he had just bought some." He conceded "he was a cocaine user" and had "purchased the cocaine in the car" for personal use.

The State charged Parker with possession of cocaine under K.S.A. 2012 Supp. 21-5706(a), (c)(1), fleeing or attempting to elude an officer under K.S.A. 2012 Supp. 8-1568(a), (c)(1), driving with a suspended license under K.S.A. 2012 Supp. 8-262(a)(1), failing to signal when turning under K.S.A. 8-1548, and failing to display lighted headlamps under K.S.A. 8-1703. A jury convicted Parker as charged. The court sentenced him to 37 months in prison. He timely filed a notice of appeal.

4

As mentioned, the panel rejected three of Parker's challenges, but agreed the district court erred under *Batson* when handling the State's peremptory challenge to the only African-American prospective juror. The panel remanded the case for further proceedings about the State's proffered race-neutral explanation for the challenge. *Parker*, 2016 WL 3570512, at *10.

Parker petitioned this court for review of the remaining three issues, which we granted. Jurisdiction is proper. K.S.A. 20-3018(b) (petitions for review of Court of Appeals decision); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

The State did not seek review of the panel's adverse *Batson* decision. See Supreme Court Rule 8.03(c)(3) (2018 Kan. S. Ct. R. 53); see also *State v. McBride*, 307 Kan. 60, Syl. ¶ 1, 405 P.3d 1196 (2017) ("If the State does not cross-petition for review of a Court of Appeals holding . . . , the Supreme Court will not consider whether that holding was erroneous when reviewing the appeal.").

SUPPRESSION OF EVIDENCE

A police officer's warrantless search "is per se unreasonable under the Fourth Amendment unless the State can fit the search within one of the recognized exceptions to the warrant requirement." *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012). One such exception is when the search occurs with probable cause plus exigent circumstances. 294 Kan. at 55. In Parker's case, the State relies on that exception. The State bears the burden to establish a challenged search or seizure was lawful. *State v. Morlock*, 289 Kan. 980, 985, 218 P.3d 801 (2009).

The State argues the drug dog's alert provided probable cause to search Parker's vehicle without a warrant, even though Parker does not dispute this now on appeal. His arguments focus on what happened before the dog's arrival—particularly the time it took waiting for the dog.

*Standard of review*

Appellate review for an evidence suppression issue is bifurcated. When reviewing a motion to suppress evidence, the factual underpinnings of the district court's decision are reviewed for substantial competent evidence and the ultimate legal conclusion is reviewed de novo. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). But if the material facts are undisputed, as they are in Parker's appeal, the suppression issue simply presents a question of law subject to de novo review. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016).

*Additional background*

At the district court, Parker argued the wait for a K-9 unit made the stop's duration unreasonable. He claimed: "The scope of the stop was exceeded in duration, as relating to the reason for the stop." He noted he was not free to leave. Parker also claimed his incriminating statements were made without his "full, knowing, and intelligent waiver" under *Miranda* because of his "physical, mental, educational and emotional state."

The State argued the vehicle search and evidence seizure were lawful because (1) Summerer had a reasonable suspicion after seeing Parker lean towards the console area; (2) "a dog sniff of an exterior of a car parked in a public place is not a search" under *State v. Skelton*, 247 Kan. 34, 46, 795 P.2d 349 (1990); (3) the dog's alert provided probable cause and "the inherent movability of a vehicle" allowed a warrantless search under the

6

automobile exception; and (4) contrary to Parker's argument that he was detained for a routine traffic stop, he was in fact arrested, so his claim that the stop's duration was unreasonable was irrelevant. In response, Parker merely noted his leaning toward the console area did not constitute probable cause, and he questioned the officer's testimony that he observed Parker's movements during the pursuit. The district court denied suppression.

As to the drug evidence, the court ruled Summerer had a reason to take possession of Parker's car because it was an instrumentality of the crime of fleeing; or in the alternative, under the circumstances Summerer's beliefs were "suspicious enough to request a drug dog" since Parker's actions were consistent with a person who was trying to hide something. The court ruled:

> "The vehicle was parked legally. . . . At that point the vehicle was actually an instrumentality of the crime of attempt to elude, but in any event, the officer's beliefs under all the circumstances were suspicious enough to request a drug dog, it hit or alerted, and drugs were found inside in the area where the defendant driver was seen making movements consistent with putting something in or taking something out of that area . . . . The actions of the defendant were suspicious and consistent with someone who was potentially trying to conceal something, but they had reason to take over this car, had the dog take a look at this specific car. Under all the circumstances the Court believes the stop and search is lawful."

In a later written ruling, the court added:

> "Court finds officer had [probable cause] to stop and then arrest driver/[defendant]. [Defendant] parked in public lot [and] locked car. Drug dog brought to scene [and] 'alerted' to passenger side. The search of vehicle (mobile) without warrant but with [probable cause] was lawful. Suppression motion denied."

7

On appeal before the panel, Parker viewed the incident as an investigatory detention. He argued the vehicle search was unlawful because it exceeded the detention's scope, was not a search incident to arrest, and occurred without his consent. Parker conceded he was lawfully arrested, but contended police should have immediately taken him to jail and called his wife, who owned the vehicle, to retrieve it, rather than "allow a defendant who has been arrested to be detained indefinitely and a seizure of a vehicle to continue indefinitely to attempt to establish probable cause for a search for evidence wholly unrelated to the reason for the initial stop and arrest . . . ."

The State did not contest Parker's search-incident-to-arrest and consent points, but argued the search did not exceed the scope of the detention because (1) employing a dog sniff of a car's exterior did not constitute a search under *Illinois v. Caballes*, 543 U.S. 405, 407-09, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005); (2) the dog's alert furnished probable cause for a vehicle search under *State v. Barker*, 252 Kan. 949, 959, 850 P.2d 885 (1993); and (3) the vehicle's inherent mobility allowed Summerer to search it after establishing probable cause to believe it contained contraband under *State v. Sanchez-Loredo*, 294 Kan. 50, 58-59, 272 P.3d 34 (2012). And the State insisted Summerer had reasonable suspicion that the vehicle contained contraband based on Parker's

> "unwillingness to stop for Officer Summerer, the chase that ensued, defendant letting a passenger out of the car and speeding off, Officer Summerer's observation of defendant digging around in the console area during the chase, and Officer Summerer['s] finding a large amount of cash on defendant when he conducted a search incident to arrest . . . ."

The State asserted Summerer's calling for a dog to conduct a sniff of the car's exterior did not "exceed the scope of the seizure of defendant and his vehicle."

8

The panel rejected Parker's scope-of-detention argument. It gave three reasons. First, the panel concluded holding Parker in the police car rather than taking him to jail for booking was "a matter of convenience for the police officer and had no effect on the eventual warrantless probable cause search of the vehicle." 2016 WL 3570512, at *5. Second, the panel rejected the claim that Parker should have been allowed to notify his wife to come get the car. The panel pointed out "[t]here was no evidence presented that if Parker's proposed procedure had been followed, his wife would have picked up the vehicle prior to the arrival of the drug dog." 2016 WL 3570512, at *4.

Finally, the panel determined Summerer lawfully seized Parker's car because (1) it was an instrumentality of his convicted crime of fleeing; (2) the car was "'"mere evidence" [that] may be the subject of lawful seizure'"; and (3) our statute "directs that '[p]roperty . . . validly seized without a warrant shall be safely kept by the officer seizing the same unless otherwise directed by the magistrate, and shall be so kept as long as necessary for the purpose of being produced as evidence on any trial.'" 2016 WL 3570512, at *5 (quoting K.S.A. 2012 Supp. 22-2512[a]).

As to the incriminating statements, Parker abandoned his *Miranda* argument made to the district court. Instead, he claimed suppression was justified under the fruit of the poisonous tree doctrine, acknowledging this was a newly raised claim. The panel held there was no basis to apply the doctrine because it had determined the search and seizure were not unconstitutional. 2016 WL 3570512, at *5.

*Discussion*

At the outset, we repeat that Parker no longer challenges the district court's probable cause finding for the vehicle search. Instead, he argues the vehicle's "seizure" before the dog sniff was unreasonable. On the other hand, the State's primary responses

9

focus on the vehicle's search being based on probable cause. The State only briefly discusses Parker's vehicle-seizure argument. This misalignment in how the parties address the facts misdirects their analysis and that of the lower courts.

We begin with Parker's complaints about what he views as the continued seizure of both himself and the car before the search.

*Parker's seizure*

Generally, when an arrest is made, with or without a warrant, the person arrested "shall be taken without unnecessary delay before a magistrate" under K.S.A. 2017 Supp. 22-2901(1), which reads:

> "[W]hen an arrest is made . . . , the person arrested shall be taken *without unnecessary delay* before a magistrate of the court from which the warrant was issued. If the arrest has been made on probable cause, without a warrant, he shall be taken *without unnecessary delay* before the nearest available magistrate and a complaint shall be filed forthwith." (Emphases added.)

Under K.S.A. 2017 Supp. 22-2901(1), "the requirement is for an arrestee to be taken before a judge or magistrate 'without unnecessary delay.'" *State v. Cuchy*, 270 Kan. 763, 766, 19 P.3d 152 (2001). But the statute does not define "without unnecessary delay," nor has its meaning been judicially developed. 270 Kan. at 766.

In *State v. Wakefield*, 267 Kan. 116, 977 P.2d 941 (1999), the court considered K.S.A. 22-2901(1)'s promptness requirement after the defendant waited more than 48 hours to be taken before a magistrate for first appearance. During this time, the defendant gave multiple, progressively inculpatory statements implicating himself in a double murder. He argued the excessive delay required the statements' suppression. The court

10

noted, "Clearly, Wakefield was not taken for first appearance without delay." 267 Kan. at 125.

The *Wakefield* court explained the unnecessary delay requirement is "designed to reduce the opportunity for third-degree practices by the police and to protect the rights of the accused by making certain that he or she is advised of constitutional rights by a judicial officer without hampering effective and intelligent law enforcement." 267 Kan. at 124. But the court ultimately held the delay was warranted under the facts, including the need to determine whether and which of two arrestees to charge with capital murder. 267 Kan. at 124-25.

Later, the *Cuchy* court succinctly observed, "*Wakefield* teaches that 'without unnecessary delay' is a flexible concept dependent upon the circumstances." *Cuchy*, 270 Kan. at 767.

Curiously, Parker never argued he should have been taken before a district court judge without unnecessary delay. Instead, his sole contention is about *where* the police detained him, i.e., the parking lot. But there is no Kansas law suggesting his continued detention at the parking lot was illegal, and Parker cites no such authority. Stated differently, Parker is not complaining the delay permitted police to exert improper pressure on him, e.g., Wakefield's claim that, but for the delay, he would have had appointed counsel earlier and, therefore, would not have made the incriminating statements.

Parker simply contends "the scope of the detention must be limited to the reason for the detention," citing *State v. Smith*, 286 Kan. 402, 410, 184 P.3d 890 (2008). But *Smith* is not on point because the seizure in that case was a routine traffic stop—not an arrest like in Parker's case. Generally in a traffic stop, if the seizure ends, the vehicle

occupants can walk or drive away. *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). Parker was not free to leave or go anywhere else because he was under arrest.

In sum, Parker was lawfully arrested and at all relevant times was in lawful custody under K.S.A. 2017 Supp. 22-2901(1). The initial seizure of Parker's person did not violate his Fourth Amendment rights, and his extended holding in the police car did not make his seizure illegal. We hold the seizure of Parker was lawful.

*Vehicle seizure*

Both the parties and lower courts viewed the circumstances regarding the vehicle as a continuing seizure. The lower courts even went so far as to characterize the vehicle as an instrumentality of the fleeing or eluding crime to justify this continuing seizure concept. But we view the facts differently and conclude that even if there were an initial vehicle seizure when pulling over Parker to effect his arrest, that seizure ended when he parked the car, got out, locked it, and plainly stated he would not consent to its search.

A property seizure occurs when there is "some meaningful interference with an individual's possessory interests in that property." *State v. Jones*, 279 Kan. 71, 75, 106 P.3d 1 (2005); see also *Segura v. United States*, 468 U.S. 796, 810, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984) ("[A] seizure affects only possessory interests, not privacy interests."). In Parker's case, there is no evidence the officers interfered in any way with the vehicle between the time Parker got out of it and the search.

A motorist's vehicle is one of the many "effects" protected by the Fourth Amendment. *United States v. Jones*, 565 U.S. 400, 404, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012). But there is little United States Supreme Court precedent addressing the

12

parameters of the Fourth Amendment's meaningful interference test as applied to property seizures. *United States v. Hill*, 805 F.3d 935, 937 (10th Cir. 2015). *Hill* is instructive and its analysis underscores the lower courts' confusion evident in Parker's case.

In *Hill*, a drug enforcement agent boarded an Amtrak train to conduct drug-interdiction activities. The agent went to the common luggage area, where passengers stored large pieces of unchecked luggage. He removed a suitcase without a name tag and carried it to the passenger area to ask if the bag belonged to anyone. Hill denied owning the bag. The agent then considered the bag abandoned and searched it, discovering cocaine and items of clothing linking the bag to Hill.

In its analysis, the *Hill* court explained that "potential seizures of luggage fall within two typical paradigms." 805 F.3d at 938. One is "taking luggage from the direct possession of a traveler," and another is "a brief detention of checked baggage that does not delay the bag from reaching its intended destination." 805 F.3d at 938. It noted the former amounts to a seizure while the latter does not. The court then stated when examining this question, "courts must be mindful of the nature of the possessory interest implicated." 805 F.3d at 938.

In the Tenth Circuit's view, Hill's possessory interest in his suitcase was "intermediate between a bag in his direct possession and a bag checked with Amtrak" because Hill would have a reasonable expectation his bag left in a common area could be "moved about the storage area as new passengers boarded the train and existing passengers exited the train." 805 F.3d at 938. "On the other hand, having retained responsibility for the bag instead of checking it with Amtrak officials, he could reasonably expect that he could access that bag in the common storage area at any time he might choose." 805 F.3d at 938. As a result, the agent's actions deviated considerably

13

from a reasonable traveler's expectations about how the bag would be treated in the common storage area and "deprived Hill of his possessory interest in being able to access his luggage on his own schedule." 805 F.3d at 938. The court therefore held a seizure occurred. 805 F.3d at 939.

By contrast, in *United States v. Germosen-Garcia*, 712 F. Supp. 862 (D. Kan. 1989), two DEA agents suspected the defendants of carrying illegal drugs. To confirm or dispel their suspicions, they arranged for a trained police dog to sniff a sample of luggage including the defendants' luggage. The dog alerted. At the time it was subjected to the dog sniff, the defendants' luggage was in a third-party common carrier's possession. The court held that the dog's use constituted neither a search nor a seizure of the luggage under the Fourth Amendment, reasoning it was still in a third-party common carrier's possession and not seized from the defendants. 712 F. Supp. at 866-67. Additionally, the evidence did not show a significant delay in processing the luggage. 712 F. Supp. at 867. The court held under these circumstances no significant possessory interest in the luggage was violated. 712 F. Supp. at 871.

In Parker's case, he had a reasonable expectation the car could remain in the public lot where he parked it until his wife retrieved it. Cf. *State v. Teeter*, 249 Kan. 548, 552, 819 P.2d 651 (1991) (enumerating grounds when a vehicle can be removed from the place where it is parked). On the other hand, Parker would not have reasonably expected to have access himself to the car because he was under arrest. This would contrast with an ordinary grocery shopper who legally might park a car in the same lot and expect to leave in it when done.

Parker's vehicle was left in a publicly available parking lot where Parker lacked the power to exclude others. See *State v. McMillin*, 23 Kan. App. 2d 100, 104, 927 P.2d 949 (1996) ("The parking lot was open to public view, and [the defendant] certainly had

14

no authority to exclude others from the lot."); *United States v. Mercado*, 307 F.3d 1226, 1230 (10th Cir. 2002) (noting "officer was at liberty to look in the windows of the van" after defendant "left it at a [repair] shop open to the public twenty-four hours a day"); 4 LaFave, Search & Seizure § 2.5(c) (5th ed. 2017) (stating a vehicle parked in an open public place, e.g., a gas station, or inside a structure, e.g., a repair shop, is open to the public). The officers did not take the car from Parker's possession. And they did not remove or take the car into their own dominion and control to wait for a dog. The vehicle simply sat where the driver parked it in a publicly available lot.

The dissent argues Parker no longer had the full and complete possessory interest in the vehicle for this situation's entire duration because he only stopped the car in response to the officer's signal to do so, i.e., part of a traffic stop. It stridently bemoans the "nonsensical notion" that "a traffic stop detainee can self-terminate the law enforcement seizure of his or her vehicle by executing an exit-and-lock maneuver." Slip op. at 22. But we do not suggest Parker unilaterally terminated a vehicle "seizure" by exiting and locking it. The legal question for property seizure is dictated by what the officers did. And what they did not do was meaningfully interfere with Parker's possessory interest in the car after he got out of it and they arrested him. Their actions are what count.

The dissent further laments nothing "would indicate to a reasonable person that his or her possessory interests in the vehicle had been freed of the arresting officer's interference," proclaiming "it would have been clear to anyone not residing in a fantasy-world parallel universe that Officer Summerer was going to make certain that the vehicle remained exactly where it was until the drug dog . . . arrived . . . ." Slip op. at 25. But despite the dissent's speculation about the officer's intent, the officer's actions did not conflict with an objectively reasonable expectation of a person in Parker's position that the car would remain where he parked it until someone lawfully retrieved it.

15

The dissent confuses the test for property seizure with the test for seizure of a person. Compare *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984) ("A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."), with *United States v. Drayton*, 536 U.S. 194, 201, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002) ("If a reasonable person would feel free to terminate the encounter, then he or she has not been seized."). Our test in this circumstance is meaningful interference with an individual's possessory interest in the property. And even assuming Parker would not have stopped his vehicle but for the command to do so during the pursuit, the officers did nothing after arresting Parker to meaningfully interfere with his possessory interests in that vehicle, i.e., his continued use. Obviously, Parker could not go on his way; but that was not because the vehicle was seized—it was because *he* was.

Perhaps because Parker anticipated the arrest, he selected a place to park the vehicle and removed himself from it before he was taken into custody. Thereafter, the officers left the automobile where Parker put it until the dog arrived and nothing happened in the intervening period affecting any possessory interest. Put simply, under this case's facts, Parker was not deprived of a possessory interest in the vehicle after his arrest while it sat in the grocery store parking lot until the dog arrived.

Based on the record, and considering the nature of Parker's possessory interest after he left the car and was placed under arrest, as well as the lack of meaningful interference by law enforcement, we hold the car was not seized between the time Parker exited and locked it and when the dog alerted on the vehicle's exterior.

16

Parker argues the police vehicle that eventually caused him to stop was not appropriately marked because it did not have lettering or a decal on its side. But the statute defines an appropriately marked police vehicle as one with activated lights, an activated siren, or both. See K.S.A. 2017 Supp. 8-1568(e)(2).

*Standard of review*

To meet the sufficiency standard, evidence must support each element of a crime. *State v. Gonzalez*, 307 Kan. 575, 586, 412 P.3d 968 (2018). When challenged, an appellate court reviews the evidence's sufficiency by "'looking at all the evidence in a light most favorable to the prosecution and determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" 307 Kan. at 586 (quoting *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 [2012]). "In doing so, the appellate court generally will 'not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" 307 Kan. at 586 (quoting *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 [2014]).

Parker's arguments require interpretation of statutes. "Questions involving statutory interpretation are questions of law also subject to unlimited review." *State v. Marinelli*, 307 Kan. 768, 774, 415 P.3d 405 (2018). "When a statute is plain and unambiguous, this court looks to its plain language." *State v. Garza*, 295 Kan. 326, 334, 286 P.3d 554 (2012). And without an ambiguity, appellate courts do not "'"speculate as to the legislative intent behind it and *will not read into the statute something not readily found in it*."'" (Emphasis added.) *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016) (quoting *State v. Keel*, 302 Kan. 560, 572, 357 P.3d 251 [2015]).

17

*Discussion*

K.S.A. 2017 Supp. 8-1568(a)(1) prohibits refusing to stop for a pursuing police vehicle "when given visual or audible signal to bring the vehicle to a stop." The appropriate marking element is not included as an element of the crime under (a)(1). It is expressed in subsection (d), which elaborates on the signal necessary to trigger criminal liability for failing to obey. Under that subsection:

"(d) The signal given by the police officer may be by hand, voice, emergency light or siren.

(1) If the officer giving such signal is within or upon an official police vehicle . . . at the time the signal is given, the vehicle . . . shall be appropriately marked showing it to be an official police vehicle . . . ." K.S.A. 2017 Supp. 8-1568(d).

The statute further provides that an "'[a]ppropriately marked' official police vehicle . . . *shall include, but not be limited to*, any police vehicle . . . equipped with functional emergency lights or siren or both and which the emergency lights or siren or both have been activated for the purpose of signaling a driver to stop a motor vehicle." (Emphasis added.) K.S.A. 2017 Supp. 8-1568(e)(2).

Parker does not argue the State failed to prove the police car was equipped with lights or a siren. Nor does he dispute the officer's testimony that he used his lights and wig-wag headlights during the pursuit. Instead, Parker asks this court to include something more to the existing statutory definition of "appropriately marked." He claims that without adding requirements for other markings, applying (e)(2) as written to his case "would render the requirement of both a signal and a marked vehicle meaningless." Put simply, Parker seeks to impose nonstatutory requirements, such as lettering and a

18

decal on the side of the police car, for the vehicle to be considered appropriately marked. This we cannot do.

The statutory language is plain. The italicized phrase "shall include, but not be limited to" allows other forms of appropriately marking official police vehicles in addition to activating lights or sirens. So contrary to Parker's view, (e)(2) does not render the second element futile or surplusage, especially when the definition of "visual or audible signal" includes not only "emergency light or siren" but also "hand" and "voice."

Undeterred by the statutory language, Parker cites out-of-state cases as authority, but they are distinguishable because the statutory schemes from those states are different. See *State v. Schultz*, 123 Ariz. 120, 121, 597 P.2d 1023 (Ct. App. 1979); *State v. Ritts*, 94 Wash. App. 784, 788, 973 P.2d 493 (1999).

To sum up, the officer testified he was driving an unmarked car outfitted with standard police equipment and lights. He activated the emergency lights and wig-wag headlights to stop Parker, who did not stop for a considerable period. During the pursuit, the officer also used the vehicle's spotlight to shine inside Parker's car. This is sufficient evidence for a rational fact-finder to find Parker guilty beyond a reasonable doubt under K.S.A. 2017 Supp. 8-1568.

SENTENCING

Parker's last issue is whether the district court erred in using his prior convictions to increase his sentence without requesting them to be proven to a jury beyond a reasonable doubt under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). This court has consistently rejected the same claim. See, e.g., *State v. Watkins*, 306 Kan. 1093, 1094, 401 P.3d 607 (2017) ("We reject Watkins' criminal-

history *Apprendi* claim as we have repeatedly done in many other cases."); *State v. Huey*, 306 Kan. 1005, 1008, 399 P.3d 211 (2017), *cert. denied* 138 S. Ct. 2673 (2018) ("We continue to adhere to the *Ivory* line of cases and will not address this claim further in this appeal."). We do so again and reject Parker's argument.

Affirmed as to the issues subject to our review.

* * *

JOHNSON, J., concurring in part and dissenting in part: I dissent on the suppression issue. Specifically, I find the majority's holding—that the defendant's "car was not seized between the time [the defendant] exited and locked it and when the [drug] dog alerted on the vehicle's exterior"—to be both factually and legally unsupportable. Slip op. at 16.

First, it may be helpful to relate some additional facts, as well as to clarify other recited facts. Officer James Summerer observed what he believed to be a traffic infraction and endeavored to effect a stop of the vehicle being driven by the defendant, David E. Parker, Jr. The defendant stopped his vehicle in response to the emergency signals on the officer's unmarked patrol car, albeit not immediately. Although Parker was arrested and charged with fleeing or attempting to elude an officer, there is nothing in the record that would suggest that the police effected an involuntary capture of Parker, e.g., by employing stop sticks or a roadblock. In short, we are presented with a traffic stop, even if it is characterized as a belated traffic stop.

After Parker voluntarily stopped and parked his vehicle in a public parking lot, he exited and locked the vehicle, at which point Officer Summerer arrested him for fleeing and attempting to elude, presumably for not stopping his vehicle quickly enough. The officer then searched his arrestee, finding $965 and a Kansas ID. At that point, Parker

20

told the officer that if he wanted to search his vehicle, he would have to obtain a search warrant. Instead, the officer placed Parker in the police car and proceeded to walk around Parker's vehicle, looking inside. When the officer's visual search of the vehicle's interior failed to reveal anything illegal in plain view, he called for a K-9 unit to come to the scene and sniff the exterior of the vehicle. The officer waited at the scene of the traffic stop—about an hour or so according to the district court—until another officer arrived with his drug dog. When the dog alerted on the passenger side, an officer crawled through the trunk of Parker's vehicle, to gain access to the interior, where the officer was able to unlock the car from the inside to facilitate an automobile search. Drugs were found in the console.

Initially, the majority appears to equate the seizure of an automobile pursuant to a traffic stop with the search of luggage on a common carrier when the luggage is not within the owner's presence or control. The luggage cases the majority cites—one from the Tenth Circuit Court of Appeals and the other from a federal district court—are simply inapposite. The United States Supreme Court has clearly opined that a traffic stop is a seizure, akin to a *Terry* stop. See *Rodriguez v. United States*, 575 U.S. ___, 135 S. Ct. 1609, 1614-15, 191 L. Ed. 2d 492 (2015). This court always treats a traffic stop as a seizure. See, e.g., *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890 (2008) ("The law recognizes that a traffic stop is a seizure under the Fourth Amendment.").

Perhaps the majority is intimating that a traffic stop only seizes the driver, not the vehicle. One might find it inscrutable that a person operating a moving vehicle can be seized without simultaneously seizing the vehicle being driven. On the other hand, physically impossible legal fictions do exist. But here such a legal fiction would run afoul of the separate definition of a property seizure that the majority recites, to-wit: "[W]hen there is 'some meaningful interference with an individual's possessory interests in that property.'" Slip op. at 12.

21

Officer Summerer's activation of his police car's emergency signals while pursuing Parker's vehicle effectively ordered Parker "to bring [his] vehicle to a stop," or be guilty of a separate crime. See K.S.A. 2017 Supp. 8-1568(a)(1) ("Any driver of a motor vehicle who willfully fails or refuses to bring such driver's vehicle to a stop for a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop, shall be guilty as provided by subsection [c][1]."). Indeed, the gravamen of the offense for which Parker was arrested is that, once a law enforcement officer gives a driver a visual and/or audible signal to stop his or her vehicle, that driver no longer possesses the full and complete possessory interests in that vehicle. To the contrary, the driver must stop using the vehicle immediately. Consequently, when Parker stopped his vehicle in response to Officer Summerer's command to do so, the vehicle was legally seized.

Accordingly, the straightforward question presented in this case is: When did the vehicle seizure end? In other words, when did the police cease its meaningful interference with Parker's possessory interests in his automobile and restore him to full possession?

But the majority's opinion raises another question: Who can terminate the seizure of a stopped vehicle? For the seizure to have ended when the majority declares—when Parker exited and locked his vehicle—a traffic stop detainee must possess the power to unilaterally terminate a law enforcement officer's vehicle seizure. Pointedly, the majority cites to no authority for the proposition that a traffic stop detainee can self-terminate the law enforcement seizure of his or her vehicle by executing an exit-and-lock maneuver prior to being confronted by the law enforcement officer, possibly at gunpoint. I would be surprised to learn that precedent for such a nonsensical notion exists.

Moreover, I would be shocked if the State does not file a motion for rehearing or modification on that point. There are a multitude of reasons that a law enforcement officer may want to separately investigate a vehicle seized in a traffic stop. For instance, very recently, this court declared that the standard mission of a traffic stop involves matters that pertain to the vehicle, such as "*inspecting the automobile's registration and proof of insurance*." *State v. Jimenez*, 308 Kan. 315, 323, 420 P.3d 464 (2018) (quoting *Rodriguez*, 135 S. Ct. at 1615). In some cases, the officer may have observed unsafe mechanical problems with the vehicle that need investigation. Or, as in this case, the officer may have observed a vehicle occupant making furtive movements towards the console during the pursuit that raised the officer's curiosity. Yet, under the majority's exit-and-lock paradigm, the investigatory detention of the vehicle would be terminated before the seizing law enforcement officer could even commence the investigation.

Perhaps more importantly, the concept that the driver of a vehicle determines the duration of a vehicle seizure following a traffic stop contradicts our recent pronouncements on traffic stop seizures. Informed by the United States Supreme Court's decision in *Rodriguez*, we held that traffic stops can legitimately last as long as is necessary for the detaining officer to fulfill the mission for which the stop was authorized. Specifically, in *Jimenez*, we said:

> "When a police officer stops a vehicle for a traffic infraction, a seizure occurs under the Fourth Amendment to the United States Constitution while the officer addresses the reason for the stop. *Wren v. United States*, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). Usually such encounters begin when the vehicle is pulled over and end when the officer has no further need to control the scene and tells the occupants they are free to leave. *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). The time in-between is temptingly seen as a bountiful opportunity for unrelated

23

criminal investigation, especially drug enforcement. The complication is the Fourth Amendment." 308 Kan. at 316.

Here, a better argument for the majority would be that Officer Summerer's arrest of Parker completed his traffic-stop mission and ended any further need to control the scene, thereby releasing Parker's vehicle from seizure. But there are multiple problems with using that argument to find an end to the actual vehicle seizure under the facts of this case.

First, the State did not (and still does not) contend that the vehicle seizure ended prior to the drug dog's arrival at the scene of the stop. To the contrary, as the majority recites, "[t]he State asserted Summerer's calling for a dog to conduct a sniff of the car's exterior did not 'exceed the scope of the seizure of defendant *and his vehicle*.'" (Emphasis added.) Slip op. at 8. In fact, at oral argument, the prosecutor continued to concede that the vehicle was seized throughout the encounter leading up to the search. Granted, a party may not stipulate to the legal questions involved in the analysis, but the factual component of whether the officer continued to interfere with Parker's possessory interest in the vehicle is amenable to concession. More importantly, a party can certainly waive and abandon an issue by failing to argue it or properly brief it. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013). The State did not raise an issue as to whether Parker's vehicle continued to be seized while awaiting the drug dog; that concept is being cut from whole cloth by the majority.

And, because a warrantless search is per se unreasonable, the State had the burden to establish that the vehicle search was lawful. That would necessarily include establishing that the vehicle detention was not unlawfully prolonged prior to the discovery of the probable cause evidence. Under the analytical path the majority manufactures on its own for this review—that is, divining an immediate seizure

24

cessation—the State would have the burden to establish that Officer Summerer's interference with Parker's possessory interest in his vehicle had ceased immediately after the traffic stop. Parker would not have any burden to prove that the seizure continued while the officer remained on scene with the vehicle, e.g., by presenting evidence that he asked for the vehicle to be released to his spouse and the officer refused. Under that protocol, there is nothing in the record to suggest that the State proved the officer relinquished control over the vehicle until the drugs were found.

Finally, the district court treated the vehicle as being seized during the entire encounter. That finding was supported by the evidence, especially Officer Summerer's actions, and deserves to be accorded our usual deference. After arresting Parker, the officer did not act as if he had relinquished control over the vehicle. Rather, after putting his arrestee in the patrol car, the officer walked around the vehicle, performing a visual search of the interior. When that maneuver did not produce probable cause to break into the vehicle, he called for a drug dog. He then waited at the scene of the seizure in the same vehicle that had effected the stop until the drug dog arrived. Nothing in those circumstances would indicate to a reasonable person that his or her possessory interests in the vehicle had been freed of the arresting officer's interference. To the contrary, it would have been clear to anyone not residing in a fantasy-world parallel universe that Officer Summerer was going to make certain that the vehicle remained exactly where it was until the drug dog that he had requested arrived on scene to perform the "non-search" for drugs. In sum, the facts, when viewed in their entirety, support the district court's finding that the law enforcement officers were controlling the scene, including Parker's vehicle, until after the search.

That leads to the ultimate question of whether the search legitimately fits within the probable cause with exigent circumstances exception to the Fourth Amendment's warrant requirement. The answer must be "no" on the record established by the State. The

25

reason for the traffic stop—the mission to be accomplished in *Rodriquez*' vernacular—was to deal with Parker's driving without headlights and then failing or refusing to heed Officer Summerer's emergency signals to stop. That mission was completed when Parker stopped his vehicle and submitted to arrest for fleeing or attempting to elude a law enforcement officer. The State did not need the vehicle to prosecute that case. All that was required was to take Parker to jail and commence the prosecution process for him to answer those charges. If any further detention of the vehicle was necessary for a criminal investigation, it was incumbent upon the State to establish that there was reasonable suspicion of another crime.

In that regard, the State half-heartedly suggests that furtive movements during the pursuit created reasonable suspicion of drug possession, albeit the majority does not address that alternative. Remembering that the State has the burden of proving an exception to the constitutionally required warrant requirement, we are presented with a scenario that requires reversal. I would hold that the State unlawfully detained Parker's vehicle beyond the time that detention was warranted by the totality of circumstances, requiring a reversal of his conviction based on the ensuing unlawful search.