IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,283

STATE OF KANSAS,
*Appellee*,

v.

GINA L. WILSON,
*Appellant.*

SYLLABUS BY THE COURT

A drug dog's sniff of the exterior of a vehicle is not a search for the purposes of the Fourth Amendment to the United States Constitution.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 29, 2023. Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Oral argument held September 12, 2024. Opinion filed May 30, 2025. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, argued the cause, and *Grace E. Tran*, of the same office, was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.:  Two Wichita police officers performed a traffic stop of Gina Wilson after they twice observed her fail to properly signal after leaving the location of a known drug house. Wilson admitted to the officers that her license was suspended, but claimed

she did not have anything illegal in the vehicle and would not consent to a search of the vehicle. Officers called for a K-9 unit, ran Wilson's information, and performed a criminal history check.

The K-9 unit—a trained officer with a trained canine named Oden—arrived at the scene at 4:51 p.m., nine minutes after it was called. About 40 seconds later, the officer in the patrol car finished the failure to signal citation and met the K-9 unit to initiate a dog sniff. Although officers had completed Wilson's citation, Wilson was not allowed to leave. At that point, the vehicle was legally parked in the street and Wilson was outside the vehicle. At 4:55 p.m., Oden indicated there were drugs in the car. Based on Oden's alert, the officers searched the car and found 30 oxycodone pills in an envelope in the console. Wilson was then arrested and charged.

Before trial, Wilson moved to suppress all evidence relating to the pills arguing that the search of her car violated the Fourth Amendment to the United States Constitution. The district court held a hearing but found no constitutional violation and denied Wilson's suppression motion. The district court found that the stop had not been meaningfully extended in light of the fact that Oden arrived 40 seconds before officers had completed Wilson's citation. A jury convicted Wilson of possession of an opiate under K.S.A. 2019 Supp. 21-5706(a) and driving while suspended.

Wilson appealed, arguing again that the search was unconstitutional. The Court of Appeals affirmed, finding that "there [was] no evidence that the dog sniff meaningfully extended the duration of the original stop" and concluding that there was no Fourth Amendment violation. *State v. Wilson*, No. 125,283, 2023 WL 9016144, at \*4-5 (Kan. App. 2023) (unpublished opinion). On appeal to this court, Wilson reprises her arguments from below. Because we find the search was constitutional—albeit for different reasons from those stated in the lower courts—we affirm.

The basic facts of the case are not disputed by the parties. And neither is the constitutionality of the initial stop. The sole issue here is whether the search of the vehicle was permissible under the Fourth Amendment's restrictions against unreasonable searches and seizures. Likewise, the parties do not dispute the fact that it is well settled law that if a drug dog alerts to the presence of illegal drugs within a vehicle, a warrantless search of that vehicle will not violate the Fourth Amendment under the automobile exception (discussed in detail below).

Hence, to prevail, Wilson must show that the drug dog sniff itself was unconstitutional. And to make this showing, she is required to demonstrate an unlawful *seizure* of the vehicle (as opposed to an unlawful stop) which enabled the officers time to conduct Oden's drug sniff. When a lawful vehicle seizure occurs on our public roadways—typically referred to as a "stop"—law enforcement are prohibited from extending the time of that seizure beyond the lawful purposes of the stop unless additional reasonable suspicion or probable cause is found during the duration of the lawful portion of the stop. See *Muehler v. Mena*, 544 U.S. 93, 100-01, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005) (officers may perform actions unrelated to the justification for the stop, so long as those actions do not measurably extend the stop); *State v. Jimenez*, 308 Kan. 315, 323-24, 331, 420 P.3d 464 (2018) (questioning driver about recent activities unrelated to the justification for the traffic stop is unconstitutional unless there is a reasonable suspicion of or probable cause to believe there is other criminal activity, or consent); see also *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009) (questioning passenger and subsequent pat-down performed concurrent with another officer's processing the driver's license, registration, and insurance was constitutional); *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1259 (10th Cir. 2006) (because trooper diligently wrote speeding warning in the patrol car while another trooper asked the driver questions unrelated to the stop, there was no measurable extension);

*United States v. Purcell*, 236 F.3d 1274, 1280 (11th Cir. 2001) (question regarding weapons did not extend the duration of the stop because was asked while officer was still writing out the citation and awaiting the results of a computer check); *United States v. Crain*, 33 F.3d 480, 485 (5th Cir. 1994) ("[W]hen questioning takes place while officers are waiting for the results of a computer check—and therefore does not extend the *duration* of the stop—the questioning does not violate *Terry*."). But see *United States v. Sharpe*, 470 U.S. 675, 685-87, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985) (once officers have completed their tasks pertaining to the justification for the stop, additional actions, taken without proper legal justification, are improper, regardless of whether they take a few moments or several minutes); *State v. Mitchell*, 265 Kan. 238, 245, 960 P.2d 200 (1998) (although the extension of a stop may be very short, the extension is unconstitutional if it lasts beyond the length necessary for its legitimate purpose); *State v. Coleman*, 292 Kan. 813, 822, 257 P.3d 320 (2011) (detaining a driver for even a few minutes in order for a K-9 unit to arrive will unconstitutionally extend the stop if the officer does not need additional time to ask exploratory questions or to process the traffic citation). Extending the stop in this manner makes the ongoing seizure of the vehicle unlawful and may result in the suppression of any evidence obtained during the period of the unlawful seizure. 292 Kan. at 823 ("An officer may not arbitrarily detain a driver in order to procure a drug-sniffing dog . . . evidence seized as a result of [such an] unlawful arrest must be suppressed.").

Our standards for reviewing motions to suppress evidence are well established.

> "'When reviewing a motion to suppress evidence, this court reviews the factual underpinnings of a district court's decision for substantial competent evidence and the ultimate legal conclusion drawn from those facts de novo. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review. [Citation omitted.] The State bears the burden to demonstrate that a challenged search or seizure was lawful. [Citations omitted.]'" *State v. Morlock*, 289 Kan. 980, 985, 218 P.3d 801 (2009).

In keeping with the explanation above, Wilson argues that the four minutes which elapsed between when the officers completed her citation and the time that Oden alerted on the vehicle were a "measurable extension" of the traffic stop beyond the initial lawful purpose. Even though she was not under arrest, Wilson argues that because she was not free to leave during these four minutes, she was unconstitutionally seized as an extension of the traffic stop. In a traffic stop, a person is seized from the moment a car stopped by the police comes to a stop. 289 Kan. at 987. Generally, once the seizure ends, the vehicle occupant is free to either walk or drive away. See *Johnson*, 555 U.S. at 333; *State v. Parker*, 309 Kan. 1, 9, 430 P.3d 975 (2018). As such, she concludes that the search of the car was also unconstitutional, and therefore the evidence gained from the unconstitutional search must be excluded.

However, "[w]hen complications arise 'in carrying out the traffic-related purposes of the stop . . . police may reasonably detain a driver for a longer duration than when a stop is strictly routine.'" *United States v. Soderman*, 983 F.3d 369, 374 (8th Cir. 2020) (quoting *United States v. Olivera-Mendez*, 484 F.3d 505, 510 [8th Cir. 2007]). Wilson's own voluntary admission to driving with a suspended license created such a "complication." See *United States v. Johnson*, 93 F.4th 383, 388 (7th Cir. 2024) ("The officers knew that he was driving with a suspended license, and so they had probable cause to arrest him. . . . [Officers] would not have allowed Johnson to drive away without a valid license. The district court therefore correctly found that . . . Johnson 'was already in police custody and going nowhere.' The stop was prolonged not by the dog sniff, but by [officer's] discovery that he would have to impound Johnson's car and not allow him to drive away in it."); *United States v. Soderman*, 983 F.3d 369, 374 (8th Cir. 2020) (the fact that defendant's "driver's license had been suspended justifiably extended the lawful scope of the traffic stop because of [defendant's] legal inability to remove the vehicle

5

from the scene and the consequential need for a licensed driver or a tow truck to do so." Therefore the "confluence of [defendant's] decision to call a tow truck" and the subsequent development of probable cause to search the vehicle thereafter "vitiates any claim that the stop was unlawfully prolonged."); *United States v. Perez*, 30 F.4th 369, 381 (4th Cir. 2022) (J. Motz, concurring) (The district court was correct to deny the suppression motion because defendant "could not have freely driven away once [the officer] issued the citations, even if those citations had been issued earlier. Therefore, the stop could not have ended at that earlier time."); *Carlisle v. Commonwealth*, 601 S.W.3d 168, 176 (Ky. 2020) ("Here, Officer Powers stopped Hughes's truck for faulty equipment, then learned that Hughes's license was suspended. Though he chose not to cite Hughes for these infractions, he needed to maintain control of the scene to ensure that Hughes did not continue to drive a vehicle with faulty equipment and with a suspended license.").

We recognize that the Fourth Amendment nexus between the *seizure* of a driver and the ultimate *search* of a vehicle is common enough in vehicle stop cases. In other words, a typical traffic infraction stop concludes with the driver driving his or her vehicle away. The two go together. If the driver is seized, so is the vehicle. But this is not always the case, as Wilson's situation illustrates. Because Wilson admitted to driving on a suspended license—a fact corroborated by the officers—she was not lawfully permitted to drive her vehicle away. As soon as she had legally parked the vehicle in response to the initial stop, the Fourth Amendment nexus between Wilson as a driver and her vehicle was broken.

Though Wichita police officers have the authority to arrest someone for driving on a suspended license, they also have the discretion not to. The officers here admitted that although they intended to arrest Wilson from the moment they asked her to exit the vehicle, they did not actually arrest her until after they searched the car and found the pills. But regardless of whether Wilson was under arrest at the time of Oden's sniff, there are absolutely no circumstances in which the officers would have allowed Wilson to

drive away in the vehicle. Put another way, regardless of what happened to Wilson, the car wasn't going anywhere. It simply became a lawfully, publicly parked vehicle in Wichita, Kansas. Nothing Wilson could have legally done during these four minutes would have moved the vehicle.

At oral argument, Wilson tried to argue that she could have hypothetically grabbed her drugs from her car and started walking away from the scene had she asked and been permitted to do so. But she never briefed this claim or developed it with citation to any authority. We decline Wilson's invitation to make a legal ruling based on unbriefed and unsupported speculation as to what could have occurred. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (issues not adequately briefed are deemed waived or abandoned). Instead, we remain focused on the legality of the events as they actually happened.

"There is ample support for concluding that a drug dog's sniff of the exterior of a vehicle is not a search for the purposes of the Fourth Amendment." *State v. Barker*, 252 Kan. 949, 957, 850 P.2d 885 (1993). Both the United States Supreme Court and this court have concluded an individual has no reasonable expectation of privacy in the exterior of a legally parked vehicle. See *Cardwell v. Lewis*, 417 U.S. 583, 591-92, 94 S. Ct. 2464, 41 L. Ed. 2d 325 (1974); *State v. Skelton*, 247 Kan. 34, 46, 795 P.2d 349 (1990). Therefore, officers do not run afoul of the Fourth Amendment's protections by performing a dog sniff of any vehicle that is legally parked in public.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures, and warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. *State v. Heim*, 312 Kan. 420, 422-23, 475 P.3d 1248 (2020). One exception to the rule prohibiting warrantless searches is "probable-cause-plus-exigent-circumstances." *State v. Sanchez-Loredo*, 294 Kan. 50,

55, 272 P.3d 34 (2012). One subset of this exception is commonly referred to as the "automobile exception." See *California v. Carney*, 471 U.S. 386, 390, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985); *State v. Conn*, 278 Kan. 387, 395, 99 P.3d 1108 (2004). The Supreme Court has developed two rationales for the automobile exception, i.e., two reasons for treating automobiles differently:  (1) the mobility of an automobile; and (2) the lower expectation of privacy people have in their automobiles, as opposed to their homes or offices. 3 LaFave, Search and Seizure § 7.2(b) (6th ed.). Exigencies based on the mobility of a vehicle exist in situations where both the vehicle and its occupants are in police custody. *Chambers v. Maroney*, 399 U.S. 42, 50-51, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970). See also *Sanchez-Loredo*, 294 Kan. at 58 ("[T]he automobile exception has no separate exigency requirement beyond a showing of mobility of the vehicle.").

"'Probable cause' to search a vehicle can be established if the totality of the circumstances indicates there is a 'fair probability' that the vehicle contains contraband or evidence." 294 Kan. at 55. A trained drug dog's alert is enough to establish probable cause to allow law enforcement to conduct a warrantless search of a vehicle. *State v. Anderson*, 281 Kan. 896, 907, 136 P.3d 406 (2006); *Barker,* 252 Kan. at 959-60.

Applied to Wilson, the dog sniff performed by Oden was not a search. *Parker*, 309 Kan. at 5. Because the car was legally parked and no one was attempting to or prevented from lawfully moving it, the sniff was legally performed regardless of whether Wilson was seized. *Skelton*, 247 Kan. at 46. Oden's alert provided probable cause which allowed the officers to perform a warrantless search of the car under the automobile exception, and the pills were properly admitted into evidence.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

* * *

ROSEN, J., dissenting:  I dissent from the majority's holding because the officers in this case extended the traffic stop to conduct a dog sniff, thereby violating the Fourth Amendment's prohibition on unreasonable seizure. I would hold the district court should have suppressed the evidence recovered as a result of that violation.

The majority and I appear to agree on some constitutional truths. We agree that a traffic stop is a seizure under the Fourth Amendment. See *State v. Jimenez*, 308 Kan. 315, 322, 420 P.3d 464 (2018). We agree that, typically, "if the driver is seized, so is the vehicle." Slip op. at 5. We agree "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 349, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). Finally, we agree that an officer cannot extend a traffic seizure, absent reasonable suspicion, to perform a dog sniff. *Rodriguez*, 575 U.S. at 353, 356.

But the majority pronounces some new legal rules for which it provides no supporting authority and with which I cannot agree. It announces that a vehicle directed to the side of the road during a traffic stop is not seized—even if the driver is—when the driver is not legally permitted to drive the vehicle. The majority likens this car to any car that was voluntarily parked in a public place. From here, the majority announces that officers can perform a dog sniff on any car legally parked in public. I elaborate below on why I cannot join the majority in forging this new, unbriefed and unsupported legal path. But, first, I will describe how I would apply the actual facts in this case to the established law.

9

Officers witnessed Gina Wilson stop for a short time at a home from which the officers suspected someone was selling drugs. They followed Wilson when she left. When Wilson failed to signal before turning, the officers initiated a traffic stop and Wilson pulled to the side of the road. The stop began at 4:36 p.m.

The first officer informed Wilson she was being pulled over because she failed to signal. Wilson told the officer she did not have a driver's license. The officers returned to their vehicle, where they confirmed Wilson's identity and that she had a suspended license and checked her criminal history. An officer called for a K-9 unit at 4:42 p.m., six minutes into the traffic stop. He then began writing the traffic citation.

The second officer got out of the patrol vehicle and asked Wilson if she would step out of her car. She complied, and the officer asked if they could search her car. Wilson said no. The officer then told her they were going to have a dog sniff her vehicle. Wilson asked why the officers were not giving her a ticket if that was why they had pulled her over. The officer replied, "We will do that, but . . . we're going to have a dog sniff your car first." A moment later Wilson asked again why the officers would not just give her a ticket. The officer replied, "Well we will, after we have the dog sniff your car." Wilson said she did not have any drugs and the officer told her "then there will be zero issues. We'll sniff your car and then we'll get outta here." The officer stood next to Wilson away from her car and on the side of the road while they waited.

The K-9 unit arrived at 4:51 p.m., 15 minutes after the traffic stop began. The first officer finished writing the citation "maybe 40 seconds" after the K-9 unit's arrival and stepped out of his patrol vehicle to assist with the sniff. The second officer moved Wilson further away from her car towards the patrol car. Four minutes later, at 4:55 p.m., the dog alerted on the vehicle and officers performed a search. They found an envelope

10

containing pills in Wilson's vehicle and placed her under arrest. The second officer then asked Wilson if he should call someone to come get her vehicle. The total time between the initial stop and the alert was 19 minutes.

The officers in this case clearly extended the traffic stop to conduct a sniff of Wilson's seized vehicle. When the officer finished writing a traffic citation, he did not release Wilson or her vehicle. Both remained seized so the K-9 officer could complete a sniff of the vehicle. As the majority recognizes, the United States Supreme Court has been clear that prolonging a traffic stop to complete a dog sniff without reasonable suspicion violates the Fourth Amendment's prohibition on unreasonable seizure. See *Rodriguez*, 575 U.S. at 349 ("[a]uthority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed," and "a dog sniff is not fairly characterized as part of the officer's traffic mission"); *State v. Jimenez*, 308 Kan. 315, 324, 420 P.3d 464 (2018) (quoting *Rodriguez*, 575 U.S. at 353) ("police may not 'extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff'"). Because the officers violated this prohibition, the resulting drug evidence collected from the search of Wilson's car should have been suppressed. See *State v. Tatro*, 310 Kan. 263, 269, 445 P.3d 173 (2019) (courts exclude evidence obtained as result of Fourth Amendment violation as fruit of the poisonous tree).

The majority does not consider whether the officers improperly extended the seizure to perform a dog sniff. Instead, it concludes Wilson's car was not seized, so the dog sniff was perfectly legal. It rests this conclusion on its new legal rule that a driver who is not legally allowed to drive breaks the "Fourth Amendment nexus" between driver and vehicle when they legally park their car at an officer's direction. Slip op. at 6. Because the driver cannot legally drive their car away from the traffic stop, the majority reasons, the vehicle becomes the same as "a lawfully, publicly parked vehicle." The majority then quickly slips in another new legal rule: "officers do not run afoul of the Fourth Amendment's protections by performing a dog sniff of any vehicle that is legally

11

parked in public." Slip op. at 7. Because Wilson's car was never seized but was instead the same as any vehicle legally parked in a public place, the dog sniff did not violate the Fourth Amendment, regardless of whether the officers were improperly extending the traffic stop here to wait for the dog.

The majority fails to support its startling new rules with any relevant legal authority and, in fact, ignores established law that conflicts with these rules.

To support its rule that the vehicle of a seized, unlicensed driver is not seized during a traffic stop, the majority cites four cases. But none of the four held that a vehicle in a traffic stop was not seized; each held that a continued seizure was reasonable under the facts. See *United States v. Johnson*, 93 F.4th 383, 388 (7th Cir. 2024) (dog sniff did not prolong traffic stop of unlicensed driver; officers had already started process to impound car when dog sniff occurred); *United States v. Soderman*, 983 F.3d 369, 374 (8th Cir. 2020) (traffic stop of unlicensed driver justifiably extended when car had been pulled over at unsafe place on interstate and officer waited for tow truck to move it); *United States v. Perez*, 30 F.4th 369, 375 (4th Cir. 2022) (officer did not unreasonably prolong traffic stop of unlicensed driver; officers were still investigating evidence of further crimes that arose during stop and had not yet issued citations when a dog sniff occurred); *Carlisle v. Commonwealth*, 601 S.W.3d 168, 176 (Ky. 2020) (traffic stop of unlicensed driver was justifiably extended when officer waited until defendant had moved their car off the roadway because securing the safety of the scene is a lawful mission of traffic stop).

If the majority really wants to investigate whether a vehicle directed to the side of the road during a traffic stop is seized, it should look to established law rather than a handful of inapposite cases from other jurisdictions. Generally, "[a] property seizure occurs when there is 'some meaningful interference with an individual's possessory

12

interests in that property.'" *State v. Parker*, 309 Kan. 1, 10, 430 P.3d 975 (2018) (quoting *State v. Jones*, 279 Kan. 71, 75, 106 P.3d 1 [2005]). The majority does not ask whether the officers in this case interfered with Wilson's possessory interest in her vehicle. Had it done so, it would have had to acknowledge that Wilson's car was seized. Wilson stopped her car and parked it at the officers' direction. She got out of the car at their direction, and she waited by the side of the road, away from her car, at their direction. The officers told her they were bringing a dog to sniff the vehicle and they would not complete the traffic stop until after that happened. They told Wilson they would "get outta here" as soon as the sniff was over and no drugs were found. They waited until the dog sniff was complete and Wilson was under arrest to ask if they should call someone to pick up her car. "It would have been clear to anyone not residing in a fantasy-world parallel universe" that the officers here were not going to let Wilson *or her vehicle* leave the scene until the dog sniff was complete. See *State v. Parker*, 309 Kan. 1, 20, 430 P.3d 975 (2018) (Johnson, J., concurring and dissenting).

The majority ignores this reality, insisting that Wilson's car was not seized because she did not have a license to drive it. Perhaps because it recognizes that someone else could have moved the car besides Wilson had the officers permitted it, the majority insists "nothing Wilson could have legally done during [the four minutes between the beginning of the stop and the K-9's alert] would have moved the vehicle." Slip op. at 7. This is a wild factual speculation that belies the record. Wilson was on the phone with a friend the entire time she and the officer were on the side of the road waiting for the K-9 unit. Had the officers not indicated to Wilson that neither she nor her car was leaving until the traffic stop was over, she could have easily directed a friend to come collect her vehicle at any point during the stop. The State presented no evidence this was an impossibility. *State v. Jimenez*, 308 Kan. 315, 322, 420 P.3d 464 (2018) (State bears burden to prove search or seizure was lawful).

13

Even if Wilson's car was not seized at the time of the sniff, I could not join the majority in its brazen announcement that officers can perform a dog sniff on any car that is legally parked in public. To support this new rule, the majority relies on a case that held a dog sniff was not a search and on two other cases that held the visual examination of publicly parked vehicles was reasonable in part because there is no expectation of privacy in the exterior of a publicly parked car. See slip op. at 7 (citing *State v. Barker*, 252 Kan. 949, 957, 850 P.2d 885 [1993] [citing cases that held dog sniff was not a search], *Cardwell v. Lewis*, 417 U.S. 583, 592, 94 S. Ct. 2464, 41 L. Ed. 2d 325 [1974] ["where probable cause exists, a warrantless examination of the exterior of a car is not unreasonable under the Fourth and Fourteenth Amendments"]), and *State v. Skelton*, 247 Kan. 34, 46, 795 P.2d 349 (1990) (viewing of and collection of soil and vegetation from the exterior of a publicly parked vehicle suspected to have been involved in a high speed chase was not unreasonable). I am shocked the majority would invent such a bold and sweeping legal rule with such feeble support. I am not on board.

Besides being legally troubling, the majority's new rules create a practical reality that is astounding. It would seem that, in the majority's new world, if an officer pulls over a driver who does not have legal authority to operate a vehicle, the officer may seize that driver and prevent anyone from moving the vehicle for as long as necessary to await a dog sniff. I cannot fathom this is what the majority had in mind, but it seems it is the result they have created. In this case, it meant officers prolonged an arrest under the guise of completing a traffic stop until they procured a K-9 and secured evidence of a crime. I would hold that was not a reasonable seizure under the Fourth Amendment.

The State argued in the district court and the Court of Appeals that even if the officers extended the seizure beyond the time needed to complete the traffic stop, the extension was lawful because the officers had reasonable suspicion Wilson was committing a separate crime. It also alluded to an inevitable discovery argument in the district court and renewed it on appeal, asserting the court should deny the motion to

14

suppress because officers would have lawfully discovered the evidence through the dog sniff even if they had ended the traffic stop when they completed the citation and arrested Wilson or sent her on her way. Neither court resolved these arguments because they held the officers did not measurably extend the traffic stop.

Because neither court evaluated the State's alternative claims, I would vacate both decisions and remand this case to the district court for consideration of the State's alternative arguments and a decision on whether they justify denying Wilson's motion to suppress.

LUCKERT, C.J., and STANDRIDGE, J., join the foregoing dissenting opinion.

15