# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 10, 2013

Lyle W. Cayce
Clerk

No. 12-50363

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JASON WESLEY TATE, also known as Jason Westley Tate,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC 6:10-CR-274-1

Before OWEN and HAYNES, Circuit Judges, and LEMELLE, District Judge.[*]

PER CURIAM:[**]

Defendant-Appellant Jason Wesley Tate appeals his conviction and sentence for possession with intent to distribute methamphetamine, possession of a firearm during the commission of a drug trafficking crime, and possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g)(1), 924(a)(2), (c)(1)(A)(i), and 21 U.S.C. § 841(a)(1), (b)(1)(C). For the following reasons, we AFFIRM.

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50363

After conducting surveillance on storage units under Tate's control, officers with the Waco Police Department executed a search warrant on the units. Inside, they discovered firearms and evidence consistent with methamphetamine distribution. Officers also discovered many of Tate's personal belongings in the units. A grand jury returned an indictment containing one drug-related charge and two firearms-related charges.

After being appointed counsel, Tate expressed a desire to represent himself. The district court properly admonished him of the dangers of self-representation as required under *Faretta v. California*, 422 U.S. 806 (1975). The district court determined that Tate knowingly and intelligently waived his Sixth Amendment right to counsel, and he proceeded to trial pro se, which ended in a mistrial. At his request, he was again appointed counsel for his second trial. At the second trial, defense counsel advanced the theory that Tate's girlfriend, Ashley Amos ("Amos") had planted the drugs and firearms. After a series of objections, Tate's mother ultimately testified without objection (or limiting instructions from the court) that she had a phone conversation with Amos in which Amos claimed to own the drugs and firearms. Prior to this testimony, Amos testified that she recalled having a conversation with Tate's mother, but that she did not recall drugs or guns being any part of the conversation.

As part of the court's charge, to which Tate made no objection, the court instructed the jury that it could consider witnesses' prior inconsistent statements only for credibility purposes, but not for the statements' substantive value. The court did not tie this general instruction to any particular testimony. The jury found Tate guilty of all three counts of the indictment. Prior to sentencing, Tate again moved to represent himself, which the district court allowed without conducting a new *Faretta* colloquy. Tate was sentenced to serve concurrent 84-month sentences on counts one and three and a consecutive 60-month sentence on count two. The base offense level used in calculating Tate's

2

sentence was increased by two levels pursuant to an adjustment for maintaining a premises for manufacturing or distributing a controlled substance.

Tate argues that the district court erred by: (1) submitting a jury instruction that effectively limited consideration of Tate's mother's testimony for credibility rather than substantive purposes; (2) permitting Tate to proceed pro se at sentencing without giving a new set of proper *Faretta* warnings; and (3) applying a two-level upward adjustment that the Guidelines in effect at the time of the offense did not contain, thereby resulting in an ex post facto violation.

First, we review Tate's challenge to the jury instruction. Because Tate did not object to the jury instruction below, we review for plain error. *United States v. Hickman*, 331 F.3d 439, 443 (5th Cir. 2003). A plain error is one that is clear or obvious and affects the defendant's substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). Tate argues that the instruction erroneously prevented the jury from considering his mother's testimony for its substantive value. Specifically, he contends that the testimony was substantively admissible as a statement against interest under Federal Rule of Evidence 804(b)(3). However, the challenged instruction referred generally to prior inconsistent statements and not specifically to Tate's mother's testimony. As Tate himself impeached a different witness (an investigator) with prior inconsistent testimony, the instruction was proper. Accordingly, we discern no plain error in the district court's instruction.

Next, we address Tate's Sixth Amendment right-to-counsel challenge. A defendant may knowingly and intelligently waive his Sixth Amendment right to counsel. *Faretta*, 422 U.S. at 835. The right to self-representation extends to both guilt and sentencing proceedings. *See United States v. Davis*, 285 F.3d 378, 385 (5th Cir. 2002). "[D]istrict courts are required to provide *Faretta* warnings to ensure that a waiver is valid." *United States v. Virgil*, 444 F.3d 447, 453 (5th Cir. 2006). The record must establish that the defendant "knows what he is

doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (quotation marks omitted). Tate's contention that his decision to waive his right to counsel was not knowingly and intelligently made is a constitutional challenge that we review de novo. *See United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005).

Tate proceeded to trial pro se after receiving sufficient *Faretta* admonishments, was retried with the assistance of counsel following a mistrial, and then elected to proceed pro se at sentencing. The parties do not dispute that Tate received proper *Faretta* warnings at his first trial; instead, Tate contends that the district court did not properly determine whether he knowingly and intelligently waived his right to counsel before sentencing. Thus we are called to address the novel issue of whether, in these circumstances, Tate should have received his *Faretta* warnings anew when he invoked his right to self-representation a second time.

Our sister circuits have held that a "valid waiver [of the right to counsel] remains in effect at subsequent proceedings in the absence of an explicit revocation by the defendant or a change in circumstances that would suggest that the district court should make a renewed inquiry of the defendant." *United States v. McBride*, 362 F.3d 360, 367 (6th Cir. 2004) (collecting cases). "The essential inquiry is whether circumstances have sufficiently changed since the date of the *Faretta* inquiry that the defendant can no longer be considered to have knowingly and intelligently waived the right to counsel." *United States v. Hantzis*, 625 F.3d 575, 581 (9th Cir. 2010).

Applying this test, we conclude that Tate's intervening trial with counsel did not constitute a sufficient change in circumstances to nullify his knowing and intelligent waiver of his right to counsel at his first trial. In the colloquy before the first trial, Tate was properly admonished such that he made his decision "with eyes open." *See Faretta*, 422 U.S. at 835. Nothing in the record

indicates that Tate's understanding of the dangers of self-representation changed between his first trial and sentencing, despite the fact that he was represented by counsel in the interim. Indeed, in his written motion to proceed pro se at sentencing, he insisted that he was "of sound mind and body" and "fully capable of making [his] own decisions without the benefit/detriment of an attorney." *See United States v. Modena*, 302 F.3d 626, 631 (6th Cir. 2002) (district court was not required to conduct a second *Faretta* hearing simply because defendant had an "interim change of heart regarding his decision to proceed pro se" but later wrote "a letter explicitly withdrawing his earlier request to be represented by appointed counsel"). Accordingly, we conclude that, under the circumstances, Tate's initial waiver survived to sentencing and the district court did not err in failing to conduct a second *Faretta* hearing.

Finally, we review Tate's sentencing contention for plain error. *See United States v. Marban-Calderon*, 631 F.3d 210, 211 (5th Cir.), *cert. denied*, 132 S. Ct. 129 (2011) .[1] Tate contends that the district court erred in imposing a two-point upward adjustment under U.S.S.G. § 2D1.1(b)(12) (2011).[2] Tate argues that the adjustment first appeared in the 2011 Guidelines that were applicable at sentencing and is absent from the 2010 Guidelines that were applicable when he committed the offense. He urges that use of the 2011 Guidelines resulted in an ex post facto violation. *See* U.S.S.G. § 1B1.11(b)(1).

---

[1] Although Tate affirmatively waived his attorney's objection to the adjustment, that objection addressed the substance of the adjustment rather than the ex post facto argument advanced here. Accordingly, we may still review this forfeited sentencing argument for plain error. *See United States v. Olano*, 507 U.S. 725,733-34 (1993) (explaining that affirmative waiver extinguishes an error, while arguments that are forfeited by "the failure to make the timely assertion of a right" may be reviewed for plain error).

[2] The adjustment provides: "If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by 2 levels." U.S.S.G. § 2D1.1(b)(12).

No. 12-50363

If the Guidelines in place at the time of sentencing indeed resulted in a higher sentence than those in place at the time of the offense, Tate would be correct. *See Peugh v. United States,* No. 12-62, 2013 WL 2459523, at *3 (U.S. June 10, 2013) (holding that an ex post facto violation occurs "when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense"). However, the Sentencing Commission amended Section 2D1.1(b) to include the challenged adjustment, effective November 1, 2010. *See* U.S.S.G. app. C, amend. 748 (Nov. 1, 2010). Because Tate committed his offenses "[o]n or about November 1, 2010," this adjustment was effective at the time of the offense. Accordingly, we reject this argument.

AFFIRMED.