IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,510

STATE OF KANSAS,
*Appellee*,

v.

DARY JENE GREEN,
*Appellant*.

SYLLABUS BY THE COURT

1.

Premeditation is the process of thinking about a proposed killing before engaging in the homicidal conduct. It requires a period, however brief, of thoughtful, conscious reflection and pondering—done before the final act of killing—that is sufficient to allow the actor to change his or her mind and abandon his or her previous impulsive intentions.

2.

To withstand a vagueness challenge, a statute must clear two hurdles. First, to satisfy Fourteenth Amendment due-process requirements under the United States Constitution, the statute must give individuals fair notice of the conduct it requires or proscribes. Second, to avoid violating the separation-of-powers doctrine inherent in our state and federal Constitutions, the statute must provide explicit standards for those who apply it to prevent arbitrary and unreasonable enforcement.

3.

The premeditated first-degree murder statute, K.S.A. 21-5402(a)(1), is not unconstitutionally vague under the second part of the vagueness test because the two components of premeditation (time and consideration) provide explicit standards to prevent arbitrary enforcement.

4.

To establish a witness is unavailable under K.S.A. 60-459(g), the party moving for admission of the witness' prior testimony must show it acted in good faith and made a diligent effort to obtain the witness' presence at trial. And under this court's precedent, statements of counsel will not satisfy this burden. Rather, the moving party must present witness testimony or other evidence demonstrating that the party made a good faith, diligent effort to secure the witness' trial attendance.

5.

The parties' agreement that a witness is out-of-state, on its own, is insufficient to establish witness unavailability under K.S.A. 60-459(g)(5).

6.

A valid waiver of the right to counsel need not be renewed at subsequent proceedings unless intervening events substantially change the circumstances existing at the time of the waiver so that the defendant can no longer be considered to have knowingly and intelligently waived the right to counsel.

Appeal from Wyandotte District Court; JENNIFER L. MYERS, judge. Oral argument held December 13, 2023. Opinion filed June 27, 2025. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, argued the cause, and was on the brief for appellant, and *Dary Jene Green*, appellant, was on a supplemental brief pro se.

*Kayla Roehler*, deputy district attorney, argued the cause, and *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, were with her on the brief for appellee.

2

The opinion of the court was delivered by

WALL, J.:  Dary Jene Green shot and killed Angela Gatlin as she was getting out of his car near the intersection of 5th Street and Quindaro Boulevard in Kansas City, Kansas. Green waived his right to counsel before preliminary hearing and represented himself through pretrial proceedings and trial. After a jury convicted him of premeditated first-degree murder, the district court briefly appointed counsel to represent Green, but he opted to resume his self-representation before his sentencing hearing. The district court sentenced him to life in prison without the possibility of parole for 50 years, often referred to as a hard 50 life sentence.

On direct appeal, Green argues his convictions should be reversed for several reasons. First, he argues there was insufficient evidence to support his conviction for premeditated first-degree murder. Second, he argues the premeditated first-degree murder statute is unconstitutionally vague because this court's definition of "premeditation" fails to distinguish premeditated first-degree murder from intentional second-degree murder, inviting arbitrary enforcement of those crimes. Third, he argues the district court erred by requiring him to present evidence that a witness was unavailable before admitting a transcript of the witness' preliminary hearing testimony at trial. Finally, he argues the record does not show he knowingly and intelligently waived his right to counsel at sentencing because the district court failed to conduct a second waiver colloquy. Green also filed a pro se brief in which he raises additional claims of error. For the reasons discussed below, we find no error and affirm Green's convictions and sentence.

FACTS AND PROCEDURAL BACKGROUND

On the afternoon of February 12, 2019, Morris Hollinshed was walking to McCord Retail Liquor when a Cadillac SUV drove past him and parked on the street. Gatlin beckoned to Hollinshed from the front passenger seat, and he approached the passenger

3

side of the SUV. Green was in the driver's seat, and he was arguing with Gatlin. Green kept telling Gatlin to get out of the car. Hollinshed asked Gatlin to do as Green said in order to maintain the peace.

Around the same time, Michael Williams was on his way to work when he realized he had forgotten his lighter. He saw Hollinshed standing by the passenger's side of a Cadillac SUV. Williams parked his car behind the SUV, walked over to Hollinshed, and asked for a light. Williams also overheard a man and a woman arguing in the SUV, and he heard the man ask the woman to get out of the car several times.

Hollinshed then saw Green take out a gun and rack it. Hollinshed recognized the gun because Green had shown it to him a few weeks earlier and told Hollinshed it was a .40 caliber. Green did not immediately point the gun at Gatlin because Hollinshed told him not to. Williams also heard someone rack a gun, so he started to walk back to his car.

As Gatlin was getting out of the SUV, Green fired at her twice. The first bullet missed and hit the wall of a nearby building. The second bullet entered the back of Gatlin's right arm, passed through her arm, and then passed through her torso. Green took off in the SUV, leaving Gatlin on the sidewalk. She later died of her injuries.

Steve McCord, owner of McCord Retail Liquor, did not see the shooting, but he had been outside shortly before it happened. He identified Green as the driver of the SUV and said he recognized the SUV as belonging to Green. He provided police with surveillance footage of Green entering the liquor store several hours before the shooting as well as footage of the shooting itself. But the SUV's driver cannot be seen through the car's window in the video of the shooting.

Several days after the shooting, Green's attorney called the Kansas City, Kansas Police Department (KCKPD) and spoke with the lead detective investigating Gatlin's murder. The attorney claimed that Green had witnessed the shooting. Green said he went into the liquor store and when he came out, he saw a man named M.L. arguing with a woman. M.L. then shot the woman. Green jumped in his vehicle and left. But Green's story was belied by the surveillance video, which did not show Green going into the liquor store immediately before the shooting or jumping into his car after the shooting.

About a week after the shooting, officers arrested Green at his home. Officers returned a few hours later to search the house. They found a safe with a gun lock and a loose .40 caliber bullet inside; a box of .40 caliber ammunition with several rounds missing; and a Cadillac SUV parked in the garage. But the gun used in the shooting was never recovered.

The State originally charged Green with intentional second-degree murder but later amended the charge to premeditated first-degree murder. Before preliminary hearing, Green moved to proceed pro se. The district court held a hearing on Green's motion in October 2019, and after an extensive colloquy, the court found Green knowingly and intelligently waived his right to counsel.

The case proceeded to trial in early August 2021, with Green still representing himself. The jury convicted Green as charged. After his conviction, the district court briefly appointed standby counsel to represent Green, but he soon expressed his desire to resume self-representation. Green represented himself at sentencing, where the district court imposed a hard 50 sentence.

Green directly appeals. We heard oral argument on December 13, 2023. Jurisdiction is proper. K.S.A. 22-3601(b)(3)-(4) (life sentence and off-grid crimes appeal directly to Supreme Court).

5

I. *There Was Sufficient Evidence to Support Green's Conviction for Premeditated First-Degree Murder*

Green was convicted of premeditated first-degree murder, which is the killing of a human being committed intentionally and with premeditation. K.S.A. 21-5402(a)(1). Through counsel, Green does not contest the sufficiency of the evidence showing he intentionally killed Gatlin; he argues only that the State failed to present sufficient evidence of premeditation. In his pro se brief, Green also argues there was insufficient evidence to show he was the shooter. The record demonstrates otherwise.

A. *Standard of Review and Relevant Legal Framework*

When reviewing the sufficiency of the evidence to support a conviction, we look at all the evidence in the light most favorable to the State to decide whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In doing so, we do not reweigh evidence, resolve evidentiary conflicts, or reassess witness credibility. *State v. Spencer*, 317 Kan. 295, 302, 527 P.3d 921 (2023).

"'Premeditation is the process of thinking about a proposed killing before engaging in the homicidal conduct.'" *State v. Hilyard*, 316 Kan. 326, 331, 515 P.3d 267 (2022). It "does not necessarily mean that an act is planned, contrived, or schemed beforehand." *State v. Qualls*, 297 Kan. 61, 66, 298 P.3d 311 (2013). Rather, premeditation "requires a period, however brief, of thoughtful, conscious reflection and pondering—done before the final act of killing—that is sufficient to allow the actor to change his or her mind and abandon his or her previous impulsive intentions." *State v. Stanley*, 312 Kan. 557, 574, 478 P.3d 324 (2020).

Premeditation can be, and often is, proved using circumstantial evidence, provided the inferences drawn from that evidence are reasonable. *Hilyard*, 316 Kan. at 331; *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). We have identified several factors that give rise to an inference of premeditation:  "'(1) the nature of the weapon used; (2) lack of provocation; (3) the defendant's conduct before and after the killing; (4) threats and declarations of the defendant before and during the occurrence; and (5) the dealing of lethal blows after the deceased was felled and rendered helpless.'" *State v. Kettler*, 299 Kan. 448, 467, 325 P.3d 1075 (2014). "'[T]he analysis of what inferences can be reasonably drawn is not driven by the number of factors present in a particular case because in some cases one factor alone may be compelling evidence of premeditation.'" *State v. Hillard*, 315 Kan. 732, 787, 511 P.3d 883 (2022).

## B.   *There Was Sufficient Evidence Green Acted with Premeditation*

Here, the State presented sufficient evidence to show Green acted with premeditation. The record confirms Green used a deadly weapon—a gun—to kill Gatlin. Green was arguing with Gatlin when he took out the gun, but the argument was not violent, and Gatlin was complying with Green's demands to get out of the SUV when he eventually shot her. See *State v. Pabst*, 268 Kan. 501, 513, 996 P.2d 321 (2000) (finding sufficient evidence of premeditation when defendant used firearm and no evidence of provocation "beyond a mild, nonviolent argument"). Witnesses also stated Green racked the gun but did not immediately shoot. The surveillance video shows about 12 seconds passed from the time Williams began walking back to his car because he heard the gun rack until Gatlin was shot. During that time, Hollinshed told Green not to aim the weapon at Gatlin. The jury could infer from this evidence that Green was "given the opportunity to turn back and abandon [his] intended course of action but decline[d] to do so." *Stanley*, 312 Kan. at 573.

7

Green also shot Gatlin at close range, and he fired a second shot after the first one missed. See *State v. Woods*, 301 Kan. 852, 875, 348 P.3d 583 (2015) (evidence that defendant fired multiple shots at close range supported finding of premeditation). He then fled the scene and did not seek medical attention for Gatlin. Green also provided a statement to police about the shooting that was directly contradicted by the surveillance video and witness testimony. See *State v. Alvidrez*, 271 Kan. 143, 149, 20 P.3d 1264 (2001) (evidence supported finding of premeditation when defendant failed to render aid, fled the scene, and lied to cover up killing). Viewing this evidence in a light most favorable to the State, a jury could reasonably infer that Green killed Gatlin intentionally and with premeditation.

## C. *There Was Sufficient Evidence that Green Was the Shooter*

Green also argues there was insufficient evidence to establish the identity of the shooter. He highlights that Hollinshed initially told police that a man named D.J., not Dary Green, shot Gatlin. But at trial, Hollinshed identified Green as the shooter. And Hollinshed testified that he knew Green by the name D.J. The State also elicited testimony from a detective that Green's middle name started with the letter J, and that D.J. could be a nickname for a person whose first name starts with the letter D and whose middle name starts with the letter J. McCord also identified Green as the SUV's driver, and both Williams and McCord recognized the SUV as belonging to Green. Finally, Green's Cadillac (as shown in photos taken by police) looked like the SUV in the video of the shooting. The jury could reasonably infer from this evidence that the man Hollinshed knew as D.J. was Green, and that Green shot Gatlin.

## II. *The Premeditated First-Degree Murder Statute is Not Unconstitutionally Vague*

Next, Green argues that the premeditated first-degree murder statute, K.S.A. 21-5402(a)(1), is unconstitutionally vague. He asserts that premeditated first-degree murder

is not meaningfully distinct from intentional second-degree murder because the Legislature failed to define "premeditation" and this court's definition of that term is overbroad. According to Green, everyone who commits intentional second-degree murder also commits premeditated first-degree murder under this definition. As such, Green believes K.S.A. 21-5402(a)(1) lacks explicit standards for enforcement and grants prosecutors unfettered discretion in their charging decisions.

## A. *Preservation*

Green concedes he did not raise this issue below. And we generally do not address legal theories, even ones of constitutional dimension, for the first time on appeal. *State v. Gutierrez-Fuentes*, 315 Kan. 341, 347, 508 P.3d 378 (2022). But there are recognized exceptions to our general preservation rule. Those exceptions may be invoked when:

> "'(1) [T]he newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court's judgment may be upheld on appeal despite its reliance on the wrong ground or reason for its decision.'" 315 Kan. at 347.

Green argues we should reach the merits of his constitutional challenge under the first and second exceptions. We agree to apply those exceptions and reach the merits of Green's argument. See *State v. Jenkins*, 311 Kan. 39, 52, 455 P.3d 779 (2020) (addressing defendant's vagueness challenge for the first time on appeal because consideration of the theory necessary to serve ends of justice or prevent denial of fundamental rights); *State v. Hinnenkamp*, 57 Kan. App. 2d 1, 5, 446 P.3d 1103 (2019) (addressing facial challenge to constitutionality of statute for first time on appeal because it involved question of law on proved or admitted facts and was finally determinative of case).

9

B.  *Standard of Review and Relevant Legal Framework*

The constitutionality of a statute and the interpretation of that statute are both questions of law subject to unlimited review. *State v. Harris*, 311 Kan. 816, 821, 467 P.3d 504 (2020).

To withstand a vagueness challenge, a statute "must clear two distinct—albeit relatively low—hurdles." 311 Kan. at 821. First, to satisfy Fourteenth Amendment due-process requirements, the statute must give individuals fair notice of the conduct it requires or proscribes. 311 Kan. at 821. Second, to avoid violating the separation-of-powers doctrine inherent in our state and federal Constitutions, the statute must "'provide explicit standards for those who apply [it]'" to prevent arbitrary and unreasonable enforcement. 311 Kan. at 821, 825 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 [1972]). By failing to include such standards, the Legislature impermissibly delegates its authority to define crimes to the executive and judicial branches, who then delineate the crime through enforcement decisions. *Harris*, 311 Kan. at 821-22.

Green has standing to raise this constitutional challenge, and we have jurisdiction to review it, based on our decision in *State v. Stubbs*, 320 Kan. ___ (No. 125,003, this day decided), slip op. at 16-26. There, we held that defendants generally have standing to bring arbitrary-enforcement challenges to the statutes they were convicted under, as such convictions present concrete injuries traceable to allegedly void statutes.

C.  *K.S.A. 21-5402(a)(1) Is Not Unconstitutionally Vague Because It Provides Explicit Standards for Enforcement*

Here, Green argues the premeditated first-degree murder statute cannot surpass the second hurdle because that crime is not sufficiently distinct from intentional second-

degree murder. The only textual difference between the premeditated first-degree murder statute and the intentional second-degree murder statute is the former's use of the phrase "with premeditation." Compare K.S.A. 21-5402(a)(1) (first-degree murder is the killing of a human being committed "[i]ntentionally, and with premeditation") with K.S.A. 21-5403(a)(1) (second-degree murder is the killing of a human being committed "[i]ntentionally"). The Legislature has not defined "premeditation," but we have interpreted the term as "'the process of thinking about a proposed killing before engaging in the homicidal conduct,'" or "'to have thought the matter over beforehand.'" *Hilyard*, 316 Kan. at 331; *State v. Martis*, 277 Kan. 267, 302, 83 P.3d 1216 (2004).

Green relies on *Harris* to support his vagueness challenge. There, we invalidated part of the criminal-possession-of-a-weapon statute because it was unconstitutionally vague. *Harris*, 311 Kan. at 826. That statute prohibits people with certain felony convictions from carrying "a dagger, dirk, switchblade, stiletto, straight-edged razor *or any other dangerous or deadly cutting instrument of like character*. (Emphasis added.)" K.S.A. 2019 Supp. 21-6304(c)(1). Looking at the statute's language, we were unable to discern a sufficiently objective standard of enforcement in the statute's residual clause emphasized above. The clause left the determination of what constituted a "dangerous or deadly cutting instrument of like character" to "the subjective judgment of the enforcement agencies and actors." 311 Kan. at 825-26. Thus, we held the residual clause failed to clear the second hurdle of the vagueness test because it invited "'varying and . . . unpredictable' enforcement decisions 'on an ad hoc and subjective basis.'" 311 Kan. at 825 (quoting *City of Lincoln Center v. Farmway Co-Op, Inc.*, 298 Kan. 540, 549, 316 P.3d 707 [2013]).

In Green's view, the premeditated first-degree murder statute presents the same problem as the residual clause in the criminal-possession-of-a-weapon statute. He argues that the Legislature failed to define premeditation, thereby impermissibly delegating its

11

authority to define crimes to the judicial and executive branches. Then, our court purportedly adopted an overbroad definition that renders premeditated first-degree murder indistinguishable from intentional second-degree murder. And this failure to meaningfully distinguish the two crimes invites arbitrary enforcement. In other words, if "every intentional murder is also premeditated murder under this [c]ourt's definition of 'premeditation,'" then in each case, prosecutors may elect which crime to charge "'on an ad hoc and subjective basis.'"

But Green's challenge is foreclosed by our recent decision in *Stanley*. There, the defendant raised a vagueness challenge to the premeditated first-degree murder statute, arguing that this court's definition of premeditation failed to distinguish the crime of premeditated first-degree murder from the crime of intentional second-degree murder. But we disagreed, explaining that "what distinguishes premeditation from intent is *both* a temporal element (time) *and* a cognitive element (consideration)." *Stanley*, 312 Kan. at 573. In other words, "premeditation is a cognitive process which occurs at a moment temporally distinct from the subsequent act." 312 Kan. at 572. We also expressed confidence that everyone can instinctively understand the experience of having a "thought" that happens "beforehand" and can recognize this experience in others. 312 Kan. at 573-74. Thus, we held that the premeditated first-degree murder statute was not unconstitutionally vague. 312 Kan. at 574.

Green attempts to distinguish *Stanley*. He claims *Stanley* resolved the defendant's challenge under the first part of the vagueness test (fair notice) only, while Green is raising an argument under the second part of that test (arbitrary enforcement). But *Stanley* did not limit its holding to only the fair-notice part of the vagueness test. Instead, the decision focused on the underlying premise of the defendant's vagueness challenge—that our definition of premeditation provides no meaningful distinction between premeditated first-degree murder and intentional second-degree murder. We rejected that foundational

12

premise, explaining the temporal and cognitive components of premeditation sufficiently distinguish the two crimes. And we held "'[a]n ordinary person [can] discern a difference between a killing that is committed intentionally and a killing that is committed intentionally and with premeditation.'" 312 Kan. at 571 (quoting *Sperry v. McKune*, 445 F.3d 1268, 1272 [10th Cir. 2006]). Quite simply, the two components of premeditation (time and consideration) give fair notice to defendants of the prohibited conduct *and* provide explicit standards to prevent arbitrary enforcement. Thus, K.S.A. 21-5402(a)(1) is not unconstitutionally vague.

III. *The District Court Did Not Err by Excluding the Preliminary Hearing Testimony of an Allegedly Unavailable Witness*

Next, Green argues the district court erred by not allowing him to admit a transcript of Williams' preliminary hearing testimony at trial. Williams was present at the scene of the shooting. He spoke with police during their investigation, testified at the preliminary hearing, and an affidavit containing his statement to police was admitted at trial. But Williams did not testify at trial. The parties represented to the court that Williams was out-of-state. Green contends that these representations established the witness' unavailability and the district court erred by declining to admit Williams' preliminary hearing testimony into evidence at trial. We disagree.

A. *Additional Facts*

Williams did not know Hollinshed, Green, or Gatlin before the shooting, and he did not identify Green, by name, as the shooter when first interviewed by police. But at preliminary hearing, Williams identified Green as the driver of the SUV after hearing Green speak. Williams explained he was able to make the voice identification because he

13

heard the driver's voice in both a "calm" and "escalated" state and got a "clear distinction" of his voice. But Williams also testified he "could not see the [SUV's] driver," he "did not see the driver's face," and he had "never seen [Green] before."

On the second day of his three-day trial, Green asked to present Williams' preliminary hearing testimony as evidence. Green explained he had subpoenaed Williams, but the State had told him that Williams was out of town and could not be located to serve the subpoena. The State added it had tried to subpoena Williams, but it had contacted one of Williams' relatives and learned the Friday before trial that Williams was in California and was not expected to be back until the end of the month. The State said it decided not to fly Williams back because it had other witnesses who would offer similar testimony at trial.

The district court explained to Green that to use the preliminary hearing transcript, Green needed to present evidence to show Williams was unavailable, and Green's evidentiary burden was not satisfied by the State saying Williams was in California. The court also informed Green that no preliminary hearing transcript had been prepared. The court held it could not find Williams unavailable based on Green's current showing.

The next day, Green elicited testimony from a detective that Williams had seen Green at the scene of the shooting, and Green asked again if he could present Williams' preliminary hearing testimony to rebut the detective's testimony. He again explained that he had subpoenaed Williams and did not know Williams would not be at trial. Standby counsel added that he had prepared subpoenas on Green's behalf, but the process server filed a return indicating they could not locate Williams at his residence. The district court denied Green's request, finding Green had failed to present any evidence to establish that Williams was unavailable.

14

B.  *Preservation*

When a district court excludes evidence at trial, the party seeking to admit that evidence must provide a sufficient proffer of its substance to preserve the issue for appellate review. *State v. White*, 316 Kan. 208, 212, 514 P.3d 368 (2022); see K.S.A. 60-405 (a judgment shall not be reversed based on the erroneous exclusion of evidence unless the record shows the proponent made the substance of the evidence known). "A formal proffer is not required, and we may review the claim as long as 'an adequate record is made in a manner that discloses the evidence sought to be introduced.'" 316 Kan. at 212.

Green made no formal proffer of the substance of Williams' preliminary hearing testimony. But discussions between the parties show that the district court knew Green wished to present Williams' preliminary hearing testimony because Williams allegedly had said he did not see the driver of the SUV. We find this informal proffer adequate for preservation purposes.

C.  *Standard of Review and Relevant Legal Framework*

"Generally, whether proof regarding a witness' unavailability is sufficient is a question within the trial court's discretion." *State v. Page*, 303 Kan. 548, 555, 363 P.3d 391 (2015). A district court abuses its discretion if its decision is arbitrary, fanciful, or unreasonable or is based on an error of law or fact. 303 Kan. at 555. Green asserts that the district court made an error of law by applying the incorrect legal standards—that is, by unnecessarily requiring him to present evidence of Williams' unavailability. This presents a question of law subject to unlimited review. 303 Kan. at 555.

Green concedes Williams' preliminary hearing testimony would be considered hearsay at trial, and hearsay is generally inadmissible under K.S.A. 60-460. But that statute sets forth several exceptions to this general rule. Relevant here, K.S.A. 2023 Supp. 60-460(c)(2)(B) permits the admission of a witness' preliminary hearing testimony if the district court finds the witness to be unavailable at trial and the opposing party had an opportunity to cross-examine the witness at the preliminary hearing:

> "Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:
>
> . . . .
>
> (c) . . . (2) if the judge finds that the declarant is unavailable as a witness at the hearing, testimony given as a witness . . . in a preliminary hearing or former trial in the same action . . . when: . . . (B) the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive similar to that which the adverse party has in the action in which the testimony is offered." K.S.A. 2023 Supp. 60-460(c).

K.S.A. 60-459(g) defines the phrase "unavailable as a witness" to include "situations where the witness is . . . (5) absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts."

To establish a witness is unavailable under K.S.A. 60-459(g), the party moving for admission of the witness' prior testimony must show it acted in good faith and made a diligent effort to obtain the witness' presence at trial. *State v. Keys*, 315 Kan. 690, 709, 510 P.3d 706 (2022); *State v. Plunkett*, 261 Kan. 1024, 1034, 934 P.2d 113 (1997). And

under our precedent, statements of counsel will not satisfy this burden. Rather, the moving party must generally present witness testimony or other evidence demonstrating that the party made a good faith, diligent effort to secure the witness' trial attendance. See *State v. Young*, 277 Kan. 588, 598, 87 P.3d 308 (2004); *State v. Brown*, 181 Kan. 375, 394-95, 312 P.2d 832 (1957); *State v. Rodriguez-Garcia*, 27 Kan. App. 2d 439, 442-43, 8 P.3d 3 (1999).

We recognize that in *State v. Vaughn*, 254 Kan. 191, 201, 865 P.2d 207 (1993), we held the district court erred in declining to find a witness unavailable even though the party moving for admission of the witness' prior testimony presented only statements of counsel to establish the witness' unavailability. But in reaching that conclusion, we noted, "[t]he trial court did not request evidence and expressed no dissatisfaction with accepting counsel's statements about her efforts to locate [the witness]. Counsel was present and could have testified had the court based its ruling on counsel's failure to offer evidence. Obviously, counsel should have offered evidence." 254 Kan. at 201.

Unlike *Vaughn*, the district court here gave Green notice it would not accept counsel's statements and Green would need to present evidence to establish Williams' unavailability. This evidentiary requirement is consistent with our precedent, and the district court's reliance on that authority does not constitute legal error. See *Brown*, 181 Kan. at 394-95.

Even if we were to consider the statements of counsel, they did not establish that Williams was "unavailable" under K.S.A. 60-459(g)(5). According to the State, Williams was in California. But an agreement that a witness is out-of-state, on its own, is insufficient to establish a witness is unavailable under K.S.A. 60-459(g)(5). And Green did no more than try unsuccessfully to subpoena Williams, which does not show he made

17

a good faith, diligent effort to bring Williams back from California. See *State v. Casanova*, 181 Kan. 498, 500, 312 P.2d 209 (1957) (return of subpoena because witness could not be located, and statement from county attorney that he had made diligent effort to find witness and had been informed that witness was somewhere in Ohio insufficient to allow for admission of preliminary hearing transcript).

Green also takes issue with "the district court's remaining ruling that Green was required to pay for a preliminary hearing transcript before trial." But the district court made no such ruling. Instead, the district court explained to Green that transcripts are only produced on request, and this request is generally made before trial because the court reporter may have little time to produce the transcript during trial. The court also explained that parties pay the court reporter to produce the transcript. Granted, some of the district court's comments may have intimated Green needed to pay for the transcripts himself. But the district court did not erroneously rule that Green had to pay for the transcripts without considering his ability to pay, as Green argues.

Green has thus failed to carry his burden to show the district court abused its discretion. See *Keys*, 315 Kan. at 708 (the party asserting error bears the burden to show that the district court abused its discretion).

IV. *Green Knowingly and Intelligently Waived His Right to Counsel at Sentencing*

Next, Green argues that the district court needed to secure another waiver of the right to counsel at sentencing. After the jury returned its verdict, Green agreed to the appointment of counsel for sentencing. But he quickly changed his mind and requested to continue representing himself. Green believes these circumstances invalidated his initial waiver of the right to counsel. And without a new advisement, the record does not show

he knowingly and intelligently waived this constitutional right. Green contends this is a structural error that requires us to vacate his sentence and remand for resentencing.

A. *Additional Facts*

During the pretrial proceedings, Green went through several attorneys—some retained and some court-appointed—but he generally expressed dissatisfaction with each one. Green eventually moved to proceed pro se before his preliminary hearing, and the district court held a hearing on Green's motion in October 2019. At the hearing, the district court conducted an extensive colloquy covering the nature of his constitutional right to counsel and the dangers and disadvantages of self-representation. The court also informed Green that the State intended to amend his charges to premeditated first-degree murder, which was an off-grid felony and carried a sentence of life in prison without the possibility of parole for 50 years. The court found Green knowingly and intelligently waived his right to counsel and appointed standby counsel. Green represented himself from October 2019 through his trial in early August 2021. At the beginning of trial, the district court reminded Green of his right to counsel and reaffirmed his decision to represent himself. And at several points during trial, the court reminded Green that he must follow court rules and the court could not give him legal advice.

On August 5, 2021, the day after the jury convicted Green of premeditated first-degree murder, the district court held a hearing because it had failed to advise Green he had 10 days to file any post-trial motions. The court asked Green if he wanted to continue representing himself for post-trial motions and sentencing, and Green responded, "No." Green asked if someone other than standby counsel could represent him. The court explained Green could retain his own attorney, but if he wanted another court-appointed attorney, Green would need to articulate a reason why standby counsel could not

19

represent him. After discussing several other matters, the court asked if Green wanted standby counsel's help, and Green responded, "That would be fine." The court then appointed standby counsel to represent Green at sentencing.

The next day, Green filed a pro se motion titled "Motion to Deny Services." In the motion, which Green dated August 5, 2021, Green states:

> "Comes now, Dary Jene Green asking the court to not pressure me to using [standby counsel's] service. I thank the court for the offer but I do not need the services. I will filed [*sic*] the . . . motions or whatever else that is needed. So I am going to have to deny his services. Thank you[.] I ask that my wish is granted. I do not also have the funds to repay for his service later down the road.
>
> "Services denied. I have done fine as my on [*sic*] self-representation. I am going all the way. Besides I have help."

Green represented himself at his sentencing hearing on October 18, 2021. At the hearing, the district court acknowledged it had appointed counsel for Green, but Green had filed a notice soon after clarifying that he did not want standby counsel's help and he wished to continue representing himself. Green expressed no disagreement with the district court's account of the events and did not otherwise invoke his right to counsel at sentencing. Consistent with the court's advisement during the original waiver colloquy, the court sentenced Green to a hard 50 life sentence.

On appeal, Green does not contest the validity of his initial waiver of counsel. Rather, he argues that an intervening event—the appointment of counsel at the August 5 hearing—required the court to engage in another colloquy before allowing Green to represent himself at the sentencing hearing. Without a new advisement, he argues the record fails to show he knowingly and intelligently waived this constitutional right.

20

B.   *Standard of Review and Relevant Legal Framework*

"The extent of the right to assistance of counsel and the related right to self-representation is a question of law over which this court exercises unlimited review." *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018).

Green brings his claim under the Sixth Amendment to the United States Constitution. That amendment guarantees the right to the assistance of counsel at all critical stages of criminal proceedings, including sentencing. *State v. Mattox*, 305 Kan. 1015, 1053, 390 P.3d 514 (2017); *State v. Pfannenstiel*, 302 Kan. 747, 758, 357 P.3d 877 (2015). And a violation of a Sixth Amendment right to counsel is subject to structural-error analysis. *State v. Jones*, 290 Kan. 373, 382, 228 P.3d 394 (2010).

While the United States Constitution does not expressly guarantee a right to self-representation, the United States Supreme Court inferred "the right to waive counsel and act as one's own attorney from the right to counsel granted in the Sixth Amendment." *State v. Burden*, 311 Kan. 859, 863, 467 P.3d 495 (2020) (citing *Faretta v. California*, 422 U.S. 806, 821, 95 S. Ct. 2525, 45 L. Ed. 2d 562 [1975]). "A criminal defendant who . . . unequivocally expresses a wish to proceed pro se has the right to self-representation after a knowing and intelligent waiver of the right to counsel. A knowing and intelligent waiver requires that the defendant be informed on the record of the dangers and disadvantages of self-representation." *State v. Vann*, 280 Kan. 782, 793, 127 P.3d 307 (2006).

Because the right to self-representation "is at odds with the right to be represented by counsel, the courts must indulge every reasonable presumption against waiver of the right to counsel and will not presume acquiescence in the loss of fundamental rights, *i.e.*,

the right to counsel." 280 Kan. 782, Syl. ¶ 4. "'[T]he [S]tate has the burden of showing that an accused was advised of his right to counsel, either retained or appointed, and that waiver of counsel was knowingly and intelligently made.'" *State v. Youngblood*, 288 Kan. 659, 662, 206 P.3d 518 (2009). "[A] waiver of counsel may not be presumed from a silent record." 288 Kan. at 662.

While we have suggested guidelines for ensuring a defendant's waiver of the right to counsel was knowingly and intelligently made, we have never required a particular inquiry or advisement before a district court allows a defendant to proceed pro se. See *Burden*, 311 Kan. at 863-64. Ultimately, the determination that a defendant has knowingly and intelligently waived the right to counsel comes down to an examination of the circumstances in each case. 311 Kan. at 864 (citing *State v. Armstrong*, 240 Kan. 446, 453, 731 P.2d 249 [1987]); see also *United States v. Hamett*, 961 F.3d 1249, 1256 (10th Cir. 2020) (waiver of right to counsel after deficient colloquy may still be valid if surrounding facts and circumstances indicate defendant understood right to counsel and difficulties of pro se representation at time of waiver).

C. *The District Court's Brief Appointment of Counsel to Represent Green After His Conviction Did Not Substantially Change the Circumstances or Otherwise Require a New Waiver of His Right to Counsel*

On appeal, Green argues the appointment of counsel at the August 5 hearing was an intervening event that required the court to engage in another colloquy before allowing Green to represent himself at his sentencing hearing. For support, he cites *United States v. Hantzis*, 625 F.3d 575 (9th Cir. 2010). There, the Ninth Circuit Court of Appeals held that a valid waiver of the right to counsel need not be renewed at subsequent proceedings "unless intervening events substantially change the circumstances existing at the time" of the waiver so that "the defendant can no longer be considered to have knowingly and intelligently waived the right to counsel." 625 F.3d at 580-81. The court stated:

"'A competent election by the defendant to represent himself and to decline the assistance of counsel once made before the court carries forward through all further proceedings in that case unless appointment of counsel for subsequent proceedings is expressly requested by the defendant or there are circumstances which suggest that the waiver was limited to a particular stage of the proceedings.'" 625 F.3d at 581.

Several other federal courts have likewise held that a defendant's valid waiver of the right to counsel continues through subsequent proceedings unless there is a substantial change in circumstances. See *United States v. McBride*, 362 F.3d 360, 367 (6th Cir. 2004) ("[A] defendant's waiver of counsel at trial carries over to subsequent proceedings absent a substantial change in circumstances."); *United States v. Fazzini*, 871 F.2d 635, 643 (7th Cir. 1989) ("Once the defendant has knowingly and intelligently waived his right to counsel, only a substantial change in circumstances will require the district court to inquire whether the defendant wishes to revoke his earlier waiver."); *United States v. Unger*, 915 F.2d 759, 762 (1st Cir. 1990) (holding district court was free to find defendant's waiver of counsel at arraignment was still in effect at sentencing hearing in the absence of intervening events); *Davis v. United States*, 226 F.2d 834, 840 (8th Cir. 1955) (holding that once defendant validly waived right to counsel, waiver need not be renewed at each subsequent proceeding).

Green claims *Hantzis* "stands for the proposition that courts must engage in some type of new pro se colloquy after an intervening event, such as . . . the reappointment of counsel." But Green overlooks a critical component of *Hantzis*—that the intervening event must substantially change the circumstances so that the defendant's original waiver can no longer be considered valid. See *Hantzis*, 625 F.3d at 580-81. Indeed, *Hantzis* identifies "[t]he essential inquiry" to be "whether circumstances have sufficiently changed since the date of the [initial waiver] that the defendant can no longer be considered to have knowingly and intelligently waived the right to counsel." 625 F.3d at 581.

Several courts have explored the types of events that warrant a new advisement and waiver. For example, some courts have held that an original waiver colloquy was no longer valid when due to changed circumstances the defendant faced a greater sentence at a sentencing hearing than he or she was advised of at the original waiver colloquy. See *Schell v. United States*, 423 F.2d 101, 103 (7th Cir. 1970); *State v. Rhoads*, 813 N.W.2d 880, 888 (Minn. 2012). And the United States Court of Appeals for the Eighth Circuit has suggested a district court may need to renew a waiver colloquy because of "an unreasonable lapse of time, newly discovered evidence which might require or justify advice of counsel, new charges brought, a request from the defendant, or similar circumstances." *Davis*, 226 F.2d at 840.

But when examining circumstances comparable to Green's, federal courts have held that a defendant is not entitled to a new waiver colloquy after the defendant requests or receives appointment of counsel and later opts again to proceed pro se. See *State v. Modena*, 302 F.3d 626, 631 (6th Cir. 2002); *United States v. Tate*, 535 Fed. Appx. 359, 362 (5th Cir. 2013) (unpublished opinion). In *Modena*, five days after knowingly and voluntarily waiving his right to counsel, the defendant sent a letter to the district court requesting the appointment of counsel. But several days later, the defendant filed another letter withdrawing his request. At a pretrial conference, the defendant again said he wished to represent himself, and the district court allowed him to proceed pro se without further inquiry. On appeal, the United States Court of Appeals for the Sixth Circuit held the district court was not required to renew the defendant's waiver of counsel because while the defendant "had an interim change of heart regarding his decision to proceed pro se, he ultimately gave the district court no reason to suspect that he was uncertain about representing himself." *Modena*, 302 F.3d at 631.

In *Tate*, the defendant represented himself at trial after knowingly and voluntarily waiving his right to counsel. Following a mistrial, he was retried with the assistance of

counsel. Then, he again elected to proceed pro se at sentencing. Applying *Hantzis*, the United States Court of Appeals for the Fifth Circuit held that the "intervening trial with counsel did not constitute a sufficient change in circumstances to nullify [the defendant's] knowing and intelligent waiver of his right to counsel at his first trial." *Tate*, 535 Fed. Appx. at 362. The court explained that while the defendant was represented by counsel at his retrial, the record did not show the defendant's understanding of the dangers of self-representation changed between his first trial and his sentencing hearing. 535 Fed. Appx. at 362.

Like *Modena* and *Tate,* the record here establishes that Green's initial waiver of his right to counsel remained valid and no material intervening events required a renewal of that waiver at sentencing. Green initially waived his right to counsel after the district court conducted an extensive colloquy. As part of that colloquy, the court informed Green that the State was planning to amend his charges to premeditated first-degree murder, which carried a sentence of life in prison without the possibility of parole for 50 years. While two years had passed between Green's initial waiver in October 2019 and the start of trial in August 2021, Green actively represented himself throughout that period. And at a hearing prior to the outset of the trial, the court reminded Green of his right to counsel, highlighted the disadvantages of self-representation, and reaffirmed his decision to proceed pro se.

While Green requested an appointment of counsel at the August 5 hearing, he immediately filed a motion requesting withdrawal of that appointment. In that motion, he asked the court to stop "pressur[ing]" him to use standby counsel. Green also said he did not need standby counsel's services, he had done fine representing himself, and he was "going all the way." See 535 Fed. Appx. at 362 (nothing in record indicated defendant no longer understood dangers of self-representation particularly when defendant "insisted that he was 'of sound mind and body' and 'fully capable of making [his] own decisions

25

without the benefit/detriment of an attorney'" in his motion to resume self-representation). And at sentencing, the district court confirmed Green's decision to resume self-representation.

The record shows that the district court's brief appointment of counsel to represent Green did not sufficiently change the circumstances so that Green could no longer be considered to have knowingly and intelligently waived his right to counsel. See *Hantzis*, 625 F.3d at 580 (looking to record as a whole to determine whether defendant's waiver was knowing and intelligent). Green's request for appointment of counsel appears to have been at most an "interim change of heart" regarding his decision to proceed pro se. *Modena*, 302 F.3d at 631. But Green ultimately gave the district court no reason to suspect he was uncertain about his decision to proceed pro se at sentencing. See 302 F.3d at 631. And nothing in the record suggests Green's understanding of the dangers and disadvantages of self-representation changed between his initial waiver of the right to counsel and the sentencing hearing. See *Tate*, 535 Fed. Appx. at 362. Thus, Green's waiver of his right to counsel and his decision to proceed pro se at sentencing was made knowingly and intelligently.

V. *Green Raises Several Issues Pro Se, but None Warrant Reversal*

In addition to the issues discussed above, which were raised and briefed by Green's appointed appellate counsel, Green raises additional claims of error in his pro se supplemental brief. In that brief, he argues (1) the district court erred by denying his motions to dismiss charges due to an illegal arrest; (2) the district court erred by not addressing his claim that the State's failure to give *Miranda* warnings at the time of his arrest violated his Fifth Amendment rights; (3) the district court erroneously admitted evidence at trial; and (4) the prosecutor erred by stating facts not in evidence during closing argument. We address these claims in turn.

A. *The District Court Did Not Err by Denying Green's Motion to Dismiss Charges Due to an Allegedly Illegal Arrest*

Green filed several motions with the district court seeking dismissal of his charges due to an allegedly illegal arrest that violated the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights. He argued his arrest was illegal because the officers did not have an arrest warrant and did not have probable cause to arrest him. After an evidentiary hearing, the district court denied those motions, ruling that Green's arrest was lawful. Green now argues the district court erred.

A district court has discretion to dismiss a criminal complaint due to an illegal arrest, but dismissal "is appropriate 'only under extremely compelling circumstances.'" *State v. Miller*, 257 Kan. 844, 854, 896 P.2d 1069 (1995). The usual sanction for an illegal arrest is the suppression of any statements made by the defendant while in custody. 257 Kan. at 854. Appellate courts apply a bifurcated standard of review to a district court's ruling on a motion to suppress. "[T]he factual underpinnings of the district court's decision are reviewed for substantial competent evidence and the ultimate legal conclusion is reviewed de novo." *State v. Parker*, 309 Kan. 1, 4, 430 P.3d 975 (2018).

We note that Green was arrested in Missouri by officers with the Kansas City, Missouri Police Department. But we need not decide which state's Constitution would apply to Green's arrest because both section 15 of the Kansas Constitution Bill of Rights and article 1, section 15 of the Missouri Constitution have been interpreted as coextensive with the Fourth Amendment to the United States Constitution. See *State v. Thompson*, 284 Kan. 763, Syl. ¶ 15, 166 P.3d 1015 (2007); *State v. Rushing*, 935 S.W.2d 30, 34 (Mo. 1996). And Green likewise argues that these rights are coextensive. Thus, we focus our analysis on the Fourth Amendment and caselaw interpreting this constitutional provision.

27

The Fourth Amendment permits law enforcement officers to make a warrantless arrest in a public place after developing probable cause, and probable cause may be imputed to an officer acting on the instructions of another officer. *State v. Hill*, 281 Kan. 136, 145, 130 P.3d 1 (2006); *State v. Miller*, 49 Kan. App. 2d 491, 496-97, 308 P.3d 24 (2013); *United States v. Pickel*, 863 F.3d 1240, 1249 (10th Cir. 2017).

The record shows officers with the Kansas City, Missouri Police Department arrested Green without a warrant, but the arresting officers acted on a pickup order issued by the KCKPD. The pickup order and its attached affidavit establish that the KCKPD had probable cause to arrest Green for intentional second-degree murder. And the facts establishing probable cause are properly imputed to the arresting officers of the Kansas City, Missouri Police Department.

Granted, the warrantless arrest occurred in Green's home, rather than a public place. See *Payton v. New York*, 445 U.S. 573, 587-89, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) (to lawfully enter home to conduct warrantless arrest, there must either be consent or exigent circumstances). But Green does not direct us to a point in the record where he challenged the lawfulness of the police's entry into his home to effect the arrest. See Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) ("Each issue must begin with . . . a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on."). Nor did we find one. Even so, the district court found that Green's wife let the arresting officers into the couple's shared home. See *State v. Boggess*, 308 Kan. 821, 827, 425 P.3d 324 (2018) (third party with common authority over premises and effects may consent to search).

Our review of the record shows the district court's fact-findings are supported by substantial competent evidence and those findings support the court's legal conclusion that Green's arrest was legal. And because his arrest was legal, the district court did not err by declining to dismiss his charges.

B. *The District Court Addressed the Merits of Green's Fifth Amendment Claim*

Green argues the district court erred by failing to address his claim that officers did not give him *Miranda* warnings at the time of his arrest. He believes this alleged omission violates his rights under the Fifth Amendment to the United States Constitution.

Green's argument is premised on a misunderstanding of the function of *Miranda* warnings. Those warnings themselves are not a constitutional right; rather, they are a prophylactic measure designed to prevent violations of a defendant's Fifth Amendment privilege against self-incrimination. *Oregon v. Elstad*, 470 U.S. 298, 305, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985). So, the mere failure to give *Miranda* warnings does not, on its own, violate a defendant's constitutional rights. *United States v. Patane*, 542 U.S. 630, 641, 124 S. Ct. 2620, 159 L. Ed. 2d 667 (2004). Instead, the violation occurs when a defendant's unwarned statements are admitted at trial as evidence of the defendant's guilt. 542 U.S. at 639, 641. Thus, the proper remedy for failure to give *Miranda* warnings is suppression of any unwarned statements. 542 U.S. at 641-42; *State v. Schultz*, 289 Kan. 334, 342, 212 P.3d 150 (2009).

Green is correct that the district court declined to address his Fifth Amendment claim at the evidentiary hearing on his motions to suppress evidence seized during a warrantless search of his home. But the court considered and rejected his Fifth Amendment claim at a subsequent hearing because Green was not subjected to interrogation immediately after his arrest. See *State v. Swindler*, 296 Kan. 670, Syl. ¶ 5, 294 P.3d 308 (2013) ("The safeguards of [*Miranda*] are triggered only when an accused is subjected to custodial interrogation.").

Granted, the district court did not hold a separate evidentiary hearing on Green's Fifth Amendment claim. Instead, it relied on the State's representation that police did not question Green at the time of his arrest and the allegations in Green's motion. Green never alleged that he was subject to interrogation—that is, that officers said or did anything that was likely to elicit an incriminating response from him. See *State v. Palacio*, 309 Kan. 1075, 1085, 442 P.3d 466 (2019) ("An officer's words or actions, including explicit questioning, is interrogation only if the officer should have known that the questioning was 'reasonably likely to elicit an incriminating response from the suspect.'"). Nor did he allege that he made any unwarned statements. Because Green failed to allege facts entitling him to relief, the district court properly ruled on the motion without an evidentiary hearing. See K.S.A. 22-3215(3) (district court shall conduct hearing on motion to suppress confession if the motion alleges grounds which, if proved, would show the confession or admission is inadmissible).

Furthermore, the State did not admit any statements from Green at trial for any purpose. So even if the district court had erred, the error would have been harmless.

C. *Green's Evidentiary Challenges Are Either Unpreserved or Fail on the Merits*

Green also raises two evidentiary challenges on appeal. First, he argues law enforcement's warrantless search of his home violated his right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. Thus, Green argues that the evidence recovered during that search was inadmissible at trial.

But K.S.A. 60-404 "dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial." *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009). Green filed several pretrial motions to suppress evidence, and the district court denied those motions after an

30

evidentiary hearing. But Green did not object to the admission of any evidence recovered from his home on the grounds that it was the product of an unlawful search. Thus, this evidentiary challenge is not preserved for our review.

Second, Green argues the district court violated his right to a fair trial by admitting Hollinshed's testimony that: (1) Green was D.J.; (2) Green shot Gatlin in the back; and (3) Green owned a .40 caliber gun. On appeal, Green argues these "misrepresentations [were] outside the scope of evidence" and prejudiced his case. But again, Green did not object to the challenged testimony at trial, so he has not preserved this evidentiary challenge for our review. See 288 Kan. at 349 (party must timely and specifically object to preserve evidentiary challenge for review).

D. *The State Did Not Commit Prosecutorial Error by Misstating the Evidence During Closing Argument*

Finally, Green argues the State committed prosecutorial error during closing argument by stating facts not in evidence. In describing where the bullet penetrated Gatlin's body, the prosecutor said:

> "*Angie was shot in the back.* She was shot in the lower back. Some people may say it's the side. Some when we were talking described it as the kidney area, towards the back side of Angie versus the front side of Angie. [A detective] testified that it's possible that the defendant was aiming towards the middle of her back and as Angie was standing up, that's how she got struck there because she was moving, standing, and turning away from the defendant." (Emphasis added.)

Green challenges the prosecutor's statement that Gatlin was shot in the back because the autopsy report indicated that she had been shot in the arm. But our review of the trial evidence and the context surrounding the challenged statement confirms that it

31

fell within the State's wide latitude in crafting arguments and commenting on evidence. See *State v. Buck-Schrag,* 312 Kan. 540, 543, 477 P.3d 1013 (2020).

Gatlin's autopsy report showed that the bullet entered the back of her right arm, exited through the middle of her interior right arm, re-entered her right-side torso, and then exited her left lower chest. But Hollinshed testified that Green shot Gatlin in the back. And two detectives testified that Gatlin's wounds were to the backside of her body. They also agreed the shooter was likely aiming at her back. Moreover, the prosecutor was merely arguing that the evidence suggested there was a lack of provocation because Gatlin was facing away from Green when he shot her. Thus, exacting precision regarding the location of the entry wounds was not essential to the prosecutor's argument. In short, the prosecutor's argument was reasonably grounded in and tied to the evidence elicited at trial, and we find no error.

Affirmed.

\* \* \*

BILES, J., concurring in part and dissenting in part:  I concur in the result. I disagree with the majority's standing analysis from *State v. Stubbs*, 320 Kan. ___ (No. 125,003, this day decided), slip op. at 16-26. I explained my reasons in that decision. *Stubbs*, 320 Kan. ___, slip op. at 27-30 (Biles, J., concurring in part and dissenting in part).

\* \* \*

STANDRIDGE, J., concurring:  I concur in the result. But as to Green's vagueness challenge to the premeditated first-degree murder statute, K.S.A. 21-5402(a)(1), I would continue to apply the federal vagueness doctrine like the United States Supreme Court

has done in such challenges—as a due process safeguard with respect to *both* prongs of the vagueness test and limited to the facts of *this* case (i.e., as-applied judicial review). See *Sessions v. Dimaya*, 584 U.S. 148, 175, 138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018) (holding statutory residual clause "'produces more unpredictability and arbitrariness than the Due Process Clause tolerates'"); *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988) ("Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis.").

The challenged law here does not implicate constitutionally protected activity or fall into any other exception that would warrant facial review. See, e.g., *City of Chicago v. Morales*, 527 U.S. 41, 55, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999) (facial review justified of criminal law that "infringes on constitutionally protected rights" and "contains no *mens rea* requirement"); *Johnson v. United States*, 576 U.S. 591, 605, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) (facial review proper when "the experience of the federal courts leaves no doubt about the unavoidable uncertainty and arbitrariness of adjudication under the residual clause"). And as the Supreme Court has long held and recently reiterated, facial constitutional challenges are heavily disfavored "because they rest on speculation, run contrary to the fundamental principle of judicial restraint, and threaten to short-circuit the democratic process." *City of Lincoln Center v. Farmway Co-Op, Inc.*, 298 Kan. 540, 548, 316 P.3d 707 (2013) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51, 128 S. Ct. 1184, 170 L. Ed. 2d 151 [2008]); see *Moody v. NetChoice, LLC*, 603 U.S. 707, 744, 144 S. Ct. 2383, 219 L. Ed. 2d 1075 (2024) ("Even in the First Amendment context, facial challenges are disfavored, and neither parties nor courts can disregard the requisite inquiry into how a law works in all of its applications.").

Thus, I would only consider whether the premeditation statute provides "explicit standards for enforcement" given Green's conduct, not for "everyone" who may be

subject to the law as the majority did here. See *State v. Green*, 320 Kan. ___, ___, slip op. at 9, 11-12 (noting Green seeks to vindicate the constitutional rights of "everyone" who could be charged with intentional or premeditated murder). As I expressed in my dissent in *Stubbs*, also filed today, this approach "effectively safeguards the due process interests at stake in a vagueness challenge while ensuring our decisions to void a state law using this federal doctrine are based on the concrete facts before us, unless constitutional implications warrant wider judicial review." *State v. Stubbs*, 320 Kan. ___, (No. 125,003, this day decided), slip op. at 31 (Standridge, J., dissenting). In sum, to the extent Green raises a *facial* vagueness challenge of the premeditated first-degree murder statute, I would not reach the merits of his claim.